## TUCKER v. KERNER.

### No. 10235.

United States Court of Appeals
Seventh Circuit.

Heard Nov. 30, 1950.

Decided Dec. 29, 1950.

Albert W. Dilling, Kirkpatrick W. Dilling, Chicago, Ill., for appellant.

Roger S. Foster, General Counsel, Securities & Exchange Commission, Washington, D. C., John I. Mayer, Attorney, Securities & Exchange Commission, Chicago, Ill., Luis Kutner, Chicago, Ill., Otto Kerner, Jr., U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

Plaintiff, Preston T. Tucker, filed his complaint in the Superior Court of Cook County on March 21, 1950, charging malicious prosecution by the defendants, Otto Kerner, Jr., United States Attorney for the Northern District of Illinois, and two of his assistants, Lawrence J. Miller and Robert J. Downing, Thomas B. Hart, William G. Kelly and James E. Murnane, officers and employees of the Security and Exchange Commission, an agency of the United States of America, Luis J. Kutner, a licensed attorney of the city of Chicago, and Harry A. McDonald. The case was allegedly removed to the United States District Court for the Northern District of Illinois, where following certain proceedings, to be subsequently discussed, the complaint was, on May 29, 1950, dismissed for failure to state a cause of action. From this order of dismissal the appeal comes to this court.

The proceedings in the District Court were conducted before Honorable Michael L. Igoe, a Judge of that court, who entered the order appealed from. Any question on this appeal as to the merits of the cause or the propriety of the order of dismissal is expressly disclaimed by counsel for appellant (hereafter the parties will be referred to as plaintiff and defendants, as they were below), providing the judge who entered such order was possessed of authority and jurisdiction.

The contested issues are: (1) Whether the court had jurisdiction over the parties and the subject matter. This issue arises from plaintiff's contention that the court erroneously refused his motion to remand the cause to the State court on the ground that the purported removal was not in compliance with law and was, therefore, void. (2) Assuming that the court had jurisdiction, whether Judge Igoe erroneously refused to disqualify himself from proceeding further in the matter because of an affidavit of personal bias or prejudice made by the plaintiff.

All the defendants (except McDonald) were duly served with summons, and all the defendants (except McDonald and Kutner) filed in the District Court petitions for removal from the State to the Federal court.

On April 10, 1950, a motion to dismiss the complaint was filed on behalf of all the defendants who had petitioned for removal, and on the same day a similar motion was filed by the defendant Kutner, who had not petitioned to remove. On April 17, 1950, counsel for plaintiff entered his "Special and Limited Appearance and Challenge to Jurisdiction of Court," on the ground that no bond accompanied defendants' petitions for removal. On the same date, plaintiff's motion to remand came on for hearing and the court, at the request of the defendants (or some of the defendants), permitted the filing of a bond in the penal sum of $200.00, which bond was filed on the same date.

It is not disputed by plaintiff but that the petitions for removal were in proper form and filed in apt time, and it is conceded before this court that the filing of the bond by the defendants was within the twenty-day period or, in other words, that such filing was within the time in which a petition for removal, accompanied by a bond, might have been filed. This statement is sufficient to bring into focus the point in issue without a statement of the dates on which the various defendants were served with process or the dates on which the petitions for removal were filed, as well as other facts which appear to be irrelevant.

Thus, there is squarely presented the issue as to whether a petition for removal in proper form and filed in the District Court in apt time, together with a bond not filed simultaneously with the petition but filed subsequently and within the time allowed for the filing of a petition, is sufficient to legally effect the removal. The procedure for removal is found in Sec. 1446, Title 28 U.S.C.A., Pars. (a) to (f), inclusive. Par. (a) provides for the form and contents of the petition and (b) the time during which the petition may be filed. Pars. (a) and (b) refer to civil actions and are not material to the instant question, and (c) refers to the time for removal in criminal cases and likewise is not material. Par. (d) provides: "Each petition for removal of a civil action or proceeding, except a petition in behalf of the United States, shall be accompanied by a bond with good and sufficient surety conditioned that the defendant or defendants will pay all costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or was improperly removed." Par. (e) provides in substance that upon the filing of the petition and bond, adverse parties shall be notified and that there shall be filed "a copy of the petition with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded." Par (f) is irrelevant to the issues of the instant case.

In the beginning, it may be noted, although we think it immaterial, that the de-fendants who filed the petitions for removal, being employees of the United States, acted under the belief that they were not required to file a bond in connection with their petitions. When at the hearing on April 17 it was contended by the plaintiff that defendants were being sued in an individual and not in their official positions and that they were, therefore, not exempt from furnishing a bond, defendants in order to obviate the point thus made obtained permission of the court, as heretofore shown, to file a bond.

Plaintiff contends that the word "accompanied" in Par. (d) means simultaneous and that a removal is not effected in the absence of the filing of a bond at the same time as the filing of the petition. No case to which we are cited or which we have been able to find has considered or decided this precise question. There are, however, numerous cases where the court has permitted the amending of either a defective petition or a defective bond, or both. In Chase v. Erhardt, D.C., 198 F. 305, the condition of the bond was not in accordance with the statute. The court stated 198 F. at page 307, "This defect in the bond relates to the mode of procedure and is not fatal to the defendant's right to remove." That court cites and quotes from Ayers v. Watson, 113 U.S. 594, 5 S.Ct. 641, 28 L.Ed. 1093. In the latter case, the court, in discussing the provisions of the removal statute as it then existed, stated 113 U.S. at page 598, 5 S.Ct. at page 642, "The second section defines the cases in which a removal may be made; the third prescribes the mode of obtaining it, and the time within which it should be applied for. In the nature of things, the second section is jurisdictional, and the third is but modal and formal. The conditions of the second section are indispensable, and must be shown by the record; the directions of the third, though obligatory, may, to a certain extent, be waived. * * * Application in due time, and the proffer of a proper bond, as required in the third section, are also essential if insisted on, but, according to the ordinary principles which govern such cases, may be waived, either expressly or by implication." Continuing, the court

stated, "We see no reason, for example, why the other party may not waive the required bond, or any informalities in it, or informalities in the petition, provided it states the jurisdictional facts; and if these are not properly stated, there is no good reason why an amendment should not be allowed, so that they may be properly stated. So, as it seems to us, there is no good reason why the other party may not also waive the objection as to the time within which the application for removal is made. It does not belong to the essence of the thing; it is not, in its nature, a jurisdictional matter, but a mere rule of limitation."

While the Ayers case does not squarely meet the question before us, it comes close. It holds that the filing of a bond within the time required by statute is not jurisdictional, and that defects in the jurisdictional averments of the petition may be cured by amendment. It appears on this authority that plaintiff's contention, that the filing of a bond simultaneously with the petition is jurisdictional, must fail.

In National Quicksilver Corp. v. World Ins. Co. of Omaha, Neb., 8 Cir., 139 F.2d 1, the court stated the situation as follows: "The bond on removal was defective in an essential particular. The appellant moved for a remand of the case to the State court on the ground that the bond was fatally defective and was not subject to amendment after the time within which the case could be removed had expired. The motion to remand was denied, and the appellee was permitted to amend the bond." The court, in approving this procedure, stated 139 F.2d at page 2, "We think that the giving of a defective bond on removal does not defeat jurisdiction, and that the defect is subject to correction." (Citing cases.)

In Kramer v. Jarvis, D.C., 81 F.Supp. 360, 361, the court stated, "If a case be of such character that it is lawfully removable—and this action is manifestly of that sort—then the steps by which removal may be accomplished are held to be procedural, 'modal and formal'; and irregularities in their pursuit, and, in the case of the bond, its entire omission, have been considered to be subject to waiver, either by direct and express action to that end or by a course of conduct amounting to the unequivocal assent to the jurisdiction of the federal court." (Citing cases.)

Also, on the right of a Federal court to cure jurisdictional defects in cases removed from the State court, see Freeman v. Bee Machine Co., Inc., 319 U.S. 448, 452, 63 S.Ct. 1146, 87 L.Ed. 1509.

■ While no case is precisely in point, it is evident that the courts have displayed a marked liberality in permitting amendments so that the purpose of the statute might be served. It is plain that the court acquires its jurisdiction from the petition and not from the bond, and the latter is required so that a plaintiff may recover from the defendant the costs incurred if it is determined that the case was improperly removed. It is evident that the bond filed in the instant case would have served that purpose.

■ It is not questioned either that the case was one which the defendants had a right to remove or that their petition for removal failed to comply with the statute. In view of the authorities, we think it is plain that the court thereby acquired jurisdiction. And no contention is made that the plaintiff was prejudiced or injured in any manner by the fact that the bond was filed subsequently rather than at the same time of the petition. See Kinney v. Columbia Savings & Loan Ass'n, 191 U.S. 78, 84, 24 S.Ct. 30, 48 L.Ed. 103. Consistent with plaintiff's argument, we suppose the proceedings would have been valid if the defendants instead of filing a bond had filed another petition "accompanied" by a bond. In any event, no reason is perceived why they could not have done so inasmuch as the time for filing a petition had not expired. And it would bear on the absurd to hold or believe that the defendants could file another petition "accompanied" by a bond but that they could not file a bond in connection with or in support of the petition on file. In our view, the word "accompanied" as used in this statute does not necessarily mean simultaneously. It may also mean in relation to, connected with, or to follow. We think

and so hold that the procedure employed was a substantial, if not a literal, compliance with the statute, and that the motion for remand was properly denied.

This brings us to the effort to disqualify Judge Igoe on account of personal bias or prejudice. Plaintiff in his brief states, "After said District Court had taken jurisdiction of this cause, as plaintiff believes and contends, wrongfully, plaintiff filed in the office of the Clerk of said Court an affidavit charging personal bias and prejudice against plaintiff on the part of the presiding Judge, to-wit, Honorable Michael L. Igoe." If plaintiff by this statement means that his affidavit of prejudice was filed because of the action of the court in taking jurisdiction, the premise for such affidavit is removed, in view of what we have held on the jurisdictional issue.

■ Sec. 144, Title 28 U.S.C.A., provides for the disqualification of a judge under the circumstances and conditions therein enumerated. It provides for the filing of a timely and sufficient affidavit that the judge before whom the matter is pending has "a personal bias or prejudice either against him or in favor of any adverse party," and "The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith." It will thus be noted that it is necessary that the affidavit "state the facts and the reasons for the belief that bias or prejudice exists".

The affidavit filed by plaintiff and certified to by his counsel is lengthy and need not be set forth verbatim. In summary, it alleges that Judge Igoe had been presiding over the bankruptcy proceedings involving the Tucker Corporation, of which plaintiff is president, in the course of which he had repeatedly made remarks "concerning plaintiff clearly indicating his personal bias and prejudice against plaintiff." (With the exception hereafter mentioned, the re-

marks thus alleged to have been made are not shown.) Then follows a quotation from "The Fantastic Story of the Tucker Car," published in Collier's Magazine for June 25, 1949. The substance of this quoted article is that hostile lawyers sought to throw Tucker in bankruptcy in spite of his plea that he could raise additional millions. Further, according to this quoted article, Tucker made reports to Judge Igoe, naming numerous parties who were "eager to bail him out." Then follows, "When the angels turned out to be ghosts, Judge Igoe said: 'I don't have the least bit of confidence in the statements of Mr. Tucker.' " The affidavit states that the defendant Kutner had repeatedly asserted in the bankruptcy proceeding that the money obtained by plaintiff from the Tucker Corporation had been "obtained fraudulently." Then it is alleged that on January 27, 1950, in the course of such proceedings, "That Judge Igoe, at said hearing, as the transcript of proceedings reveals, seemed inclined to place credence in the said unsupported Kutner charge, and, in the course of his remarks from the Bench, included the following: 'That is the difficulty in this whole case and the sad situation presented by the whole case is that the persons who have been defrauded are the poorest and smallest people in America, five or ten dollar people, those are the people we have to protect around here.' " There follow allegations concerning a criminal trial of Tucker in the Federal court, in which he was found not guilty, that not a single witness testified as to having been defrauded, and that the result of such trial was well known to Judge Igoe. The affidavit concludes: "That, in the light of these facts, the remark of the said Judge Igoe, made from the Bench on January 27, 1950, in the course of the aforesaid hearing, in effect charging the plaintiff herein with fraud, illustrates, specifically, the personal bias and prejudice that the said Judge Igoe bears against the plaintiff herein."

It is evident from this last quoted paragraph that plaintiff relies on the remarks made from the Bench by Judge Igoe on January 27, 1950, and in reality that is the sole allegation of fact upon which the

charge of bias and prejudice must rest. The portion of the affidavit describing and quoting from the article in Collier's is no allegation of fact insofar as Judge Igoe is concerned. It is not alleged that he had any connection, directly or otherwise, with the publication of such article. It is not even alleged that the information contained therein was obtained from Judge Igoe. It is solely the statement of the publication, a third party, and insofar as Judge Igoe is concerned it is hearsay. Certainly statements cannot be charged to a judge or other person by a third party with whom he is unrelated and unconnected, even though such third party may attempt to place words in his mouth.

Likewise, the argument of attorney Kutner, purportedly made before the court, that the money received by plaintiff from the Tucker Corporation had been "obtained fraudulently" is not chargeable to Judge Igoe. Charges far more serious have many times been made by counsel in argument to a court or a jury. It is not alleged that the statement made by Judge Igoe on January 27 was in response to Kutner's argument but only that Judge Igoe "seemed inclined to place credence in the said unsupported Kutner charge." But assuming that Judge Igoe's statement was made in direct response to such charge, we think it wholly insufficient to support a charge of "personal bias or prejudice." Plaintiff's name is not mentioned, and the most that can be made of the statement is that the judge had an opinion from "this whole case" that the poor people of America had been defrauded. Whether such an opinion was justified is beside the point. At most, it could only represent a judicial opinion and furnishes no support for the charge made in the affidavit. Every member of this court, every member of any court, every judge, when he hears a case or writes an opinion must form an opinion on the merits and oft times no doubt an opinion relative to the parties involved. But this does not mean that the judge has a "personal bias or prejudice." If it did, the disqualification of judges would be a matter of every-day rather than the unusual and extraordinary occurrence which the statute is designed to meet.

Plaintiff places much reliance and in its brief quotes copiously from Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481. He fails, however, to state the facts alleged in the affidavit in that case, which are about as far from those alleged here as the North Pole is from the South. The gist of the holding in that case insofar as pertinent here is as stated in a headnote, "The judge may pass upon the sufficiency of the affidavit, but not upon the truth or falsity of the facts alleged." Judge Igoe in denying the affidavit no doubt followed that principle, and so do we, but for the reasons stated we are of the view that the facts alleged, accepting them at their face value, are insufficient to support the charge. As was recognized and stated in the Berger case, 255 U.S. at page 33, 41 S.Ct. at page 233, "Of course the reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." In the Berger case, the court held that the affidavit met the standard thus announced. In the instant case, we hold that it does not.

In the Berger case, the Supreme Court discusses its former opinion in Ex parte American Steel Barrel Co. and Seaman, 230 U.S. 35, 33 S.Ct. 1007, 57 L.Ed. 1379. In this latter case the court made a statement which we think is particularly appropriate here. It stated, 230 U.S. at page 43, 33 S. Ct. at page 1010: "The basis of the disqualification is that 'personal bias or prejudice' exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. It is a provision obviously not applicable save in those rare instances in which the affiant is able to state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice. It was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause. Neither was it intended to paralyze the action of a judge who has heard the

case, or a question in it, by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard."

No good purpose could be served in prolonging this opinion by citing or discussing other cases. After all, the statute is plain, and a judge when presented with the embarrassing situation of passing upon an affidavit charging "personal bias or prejudice" is entitled to and must look solely to the facts alleged in support of such charge. His duty to deny the affidavit on insufficient allegations is no less imperative than to allow it on sufficient allegations.

In the instant situation we hold that the affidavit was insufficient and that it was properly denied. The order appealed from is

Affirmed.