In re FEDERAL FACILITIES REALTY TRUST, a common law trust, Debtor.

In re NATIONAL REALTY TRUST, a common law trust, Debtor.

Nos. 58334, 58335.

United States District Court
N. D. Illinois, E. D.
April 25, 1956.

Urban A. Lavery, Chicago, Ill., for intervening plaintiff, Paul E. Darrow.

Murphy, Pearson & O'Connor, Chicago, Ill., for intervening defendants, Kulp and the Estate of Johnson.

CAMPBELL, District Judge.

When these cases were first assigned to me from the calendar of Judge Holly on May 24, 1948, I asked to be relieved of the assignment. It became immediately apparent from even a cursory reading of the then pending report and findings of Special Master Archie Cohen that the affairs of these two debtors in reorganization were in horrible condition as a result of the gross mismanagement and questionable practices of one Darrow, a Trustee appointed by Judge Holly, who had resigned during the course of an in-vestigation of his conduct of the estates. That surcharges might have to be taxed and possibly disciplinary proceedings for misconduct instituted against the resigned Trustee, and two of his employees, Kulp and Johnson seemed quite certain. At that time I did not know and had never previously heard of Darrow, Kulp or Johnson. The Executive Committee refused my request to be relieved of this distasteful assignment, however, on the ground that Master Cohen's report had been pending, without action thereon for some time, that some judge had to proceed to act on it, that Judge Holly was retiring from the Court, and that my name had been drawn by lot in the regular procedure of reassignment provided in our Rules. I thereupon reluctantly undertook these two reorganization proceedings which now are completely terminated with the fortunate result of payment of security holders and creditors in full despite many delays and difficulties.

Upon further and full consideration of Referee Cohen's report, the various objections thereto, and of the briefs and arguments filed and heard thereon, I became convinced that Kulp and Johnson, with the full knowledge and acquiescence of Darrow, had acted contrary to the best interests of the estates and to their own personal benefit in which disgraceful conduct Darrow was guilty at least of woeful neglect of duty. I thereupon filed my memorandum and order herein dated April 12, 1949 in which I concluded that the former Trustee should be surcharged thereon. I thereafter made certain that all three of these persons were severed from any further contact with the estates and the various subsidiaries. It was then my opinion based upon the clear and well supported findings of the Special Master, that Darrow, Kulp and Johnson were equally guilty of this breach of trust and that all knew what each was doing. Years of close association with the administration of these estates has confirmed that opinion and it still remains my sincere conviction.

More recently in the administration of these estates, it became my disagreeable duty to have to deal officially with Kulp and Johnson in effecting a settlement with them concerning certain· property claimed both by them and by the estates. In so doing, I dealt with them to the exclusion of Darrow, not because I felt them any less culpable than Darrow, but because they had or controlled possession of the property which the estates sought. I approved a settlement of the dispute with the representatives on these two of the three unfaithful servants because I was persuaded upon full consideration of the entire matter, that the estates would profit more by the settlement than they could ultimately realize from the lengthy and costly litigation that was the only alternative. Having made that decision, I wanted to have done completely with the distasteful business as soon as possible and thus I insisted upon both of my Trustees promptly and fully carrying out the terms of my order even though one of them and his attorney obviously disagreed with certain parts of it. How Kulp and Johnson divided these reluctantly given and ill-gotten gains, and whether or not they shared any part of it with Darrow, their joint malefactor in trust, I felt, and indeed stated in Court, was no concern of mine. I had made the best settlement possible for the estates with the two malefactors in the regrettable position to deal with the estates and thought I was at last finished with all three. That I was mistaken has been made painfully apparent in the recent opinion of the Court of Appeals, Federal Facilities Realty Trust v. Kulp, 7 Cir., 220 F.2d 495, and it now becomes my duty, under that Court's mandate, to see to the division of the aforesaid gains upon the intervention petition of Darrow for a portion of them.

▌▌▌ In that regard, the matter is now before me on Darrow's affidavit which had been filed, after the lodging of the above mandate, under the alleged authority of the provisions of Title 28 U.S.C. § 144. Affiant attacks the duty of this Court to proceed to a final adjudication in these debtor proceedings, alleging that the presiding judge has a personal bias and prejudice against him. It becomes my duty, therefore, as the presiding judge, to pass upon the legal sufficiency of Darrow's affidavit, but not upon the truth or falsity of the facts therein alleged. Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481; Tucker v. Kerner, 7 Cir., 186 F.2d 79. If the reasons and facts set forth in the affidavit give fair support "to the charge of a bent of mind that may prevent or impede impartiality of judgment", then it is my duty to allow the affidavit and certify the case to the Executive Committee for reassignment to another judge. Berger v. United States, supra, 255 U.S. at page 33, 41 S.Ct. at page 233. However, my duty to "deny the affidavit on insufficient allegations is no less imperative than to allow it on sufficient allegations." Tucker v. Kerner, supra, 186 F.2d at page 85. That Section 144 must be strictly construed is not open to question. Cf. Ex parte American Steel Barrel Co. (Seaman), 230 U.S. 35, 33 S.Ct. 1007, 57 L.Ed. 1379; Marquette Cement Mfg. Co. v. Federal Trade Commission, 7 Cir., 147 F.2d 589. With these fundamental rules in mind, I shall consider the legal sufficiency of Darrow's affidavit.

The facts upon which the affiant relies to support his charge of prejudice are set forth in paragraphs 6, 7, 8 and 9 of the affidavit. Paragraphs 7(a) and 7(b) contain certain statements, previously made by Referee Ward, which were read by me from the bench on July 23, 1954. These statements were in regard to what I believed to be the lack of merit of Darrow's claim as set forth in his Intervention Petition. Paragraph 7(c) contains a statement made by me on the same date to the effect that Darrow's petition on its face indicated that it was of no merit. Paragraph 8(a) contains a statement made by me on July 23, 1954, to the effect that I considered Darrow's motion for a supersedeas order,, which previously had been presented to

Judge Perry, to be inadequate and, in many respects, inaccurate. Paragraph 8(b) contains a comment that I considered the presentation, to Judge Perry, of the motion for a supersedeas order to be in disobedience to my order of general reference to Referee Ward. Paragraph 8(c) contains my comment to the effect that an appeal on its face must appear to be meritorious in order to justify the issuance of a writ of supersedeas. In each paragraph only partial quotations are taken from the transcript of proceedings. Such quotations as set up in the affidavit are clearly out of context and the entire transcript of each proceeding cited should be read.

██ It is quite apparent, even from the most cursory examination of the statements contained in paragraphs 7 and 8 of the Darrow affidavit, that the affiant merely complains about adverse rulings already made. That is, the affiant objects to the Court's opinion as to the law applicable to the issue then presented for decision. Each statement, in each instance, was in regard to a judicial determination made by the Court concerning the Court's ruling, first, on Darrow's intervention petition and later on Darrow's motion for a supersedeas order. It is well settled law that a judge's ruling derived from a judicial determination of the facts in each case, together with his reasons in support of the ruling, are subject to attack only on appeal and not upon the filing of a motion to disqualify. Ex parte American Steel Barrel Co. (Seaman), supra; Tucker v. Kerner, supra.

In the latter case, the Court made a statement which is particularly appropriate here. It stated, 186 F.2d at page 84: "Every member of this court, every member of any court, every judge, when he hears a case or writes an opinion must form an opinion on the merits and oft times no doubt an opinion relative to the parties involved. But this does not mean that the judge has a 'personal bias or prejudice.' If it did, the disqualification of judges would be a matter of every-day

rather than the unusual and extraordinary occurrence which the statute is designed to meet."

In writing the Tucker case, supra, Judge Major went on to cite, with approval, a statement contained in the American Steel Barrel case, supra, which I feel compelled to set forth herein. The Supreme Court stated, 230 U.S. at page 43, 33 S.Ct. at page 1010: "The basis of the disqualification is that 'personal bias or prejudice' exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. It is a provision obviously not applicable save in those rare instances in which the affiant is able to state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice. It was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause. Neither was it intended to paralyze the action of a judge who has heard the case, or a question in it, by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard."

██ In the instant case, I have been shown the light by the Court of Appeals insofar as Darrow's intervention petition and supersedeas motion are concerned. On appeal of my orders in each of these matters, I have been reversed in each instance, Federal Facilities Realty Trust, etc. v. Kulp, 7 Cir., 220 F.2d 495. This having been done, the affiant has been made whole for any incorrect, adverse rulings which I previously have rendered in this case. It is apparent, therefore, that the affiant, in paragraphs 7 and 8, merely complains about these incorrect rulings and, as such, fails to allege personal bias or prejudice as required by the statute.

In paragraph 6, the affiant sets forth certain comments made by me on Novem-

ber 25, 1953. In response to affiant's counsel's remarks to the effect that the Court of Appeals and the Supreme Court, in earlier decisions, found the affiant, Darrow, personally blameless for what transpired during his tenure as trustee in these debtor proceedings, I stated that I was not in sympathy with such views and that I considered any language used by the Court of Appeals or the Supreme Court to this effect as *obiter dicta*.

■ At the outset, it should be observed that these comments were made in the course of a ruling wherein I denied Darrow's objections to the confirmation of the Plans of Reorganization. As such, the authorities which compel a ruling that the facts alleged in paragraphs 7 and 8 are insufficient, compel a ruling that the facts alleged in paragraph 6 are also, likewise insufficient. That this Court believes, as a matter of law, that the language of the Court of Appeals and the Supreme Court is *obiter dicta*, is an issue of law which is reviewable on appeal of the general issue and is not grounds upon which a motion to recuse might be based. There is, however, a more compelling reason which requires a ruling that paragraph 6, and indeed the entire affidavit, is insufficient.

■ A distinction must be drawn between a judicial determination derived from evidence and lengthy proceedings had before the court, and a determination not so founded upon facts brought forth in court, but based on attitudes and conceptions that have their origins in sources beyond the four corners of the court room. The latter type determination is the "personal prejudice" that the statute guards against; the former type determination is not. And this is justifiably so since the efforts of one judge in hearing a case would be for nought if, once having reached some conclusion as the result of his being exposed to the particular facts of a case, he would then be precluded from exercising this familiarity in disposing of the case in its entirety. Another judge, if we were to reduce ourselves to this ridiculous absurdity, would then, of necessity, be forced to rehear the entire case and would, in all probability, arrive at the same conclusions which the first judge, by using his familiarity with the underlying facts of the case, could have reached with far greater dispatch.

■ A statement which is most apropos to the instant situation is contained in Craven v. United States, an opinion of the Court of Appeals for the First Circuit, 22 F.2d 605. The court stated, at page 607: "At most, then, the affidavit charges a 'bias and prejudice,' grounded on the evidence produced in open court at the first trial, and on nothing else. We hold that such bias and prejudice (if these be appropriate terms for a well-grounded state of mind [Berger v. U. S.], 255 U.S. [22] 42, 41 S.Ct. [230] 236, 65 L.Ed. 481) is not personal; that it is judicial. 'Personal' is in contrast with judicial; it characterizes an attitude of extra-judicial origin, derived *non coram judice*. 'Personal' characterizes clearly the prejudgment guarded against. It is the significant word of the statute. It is the duty of a real judge to acquire views from evidence. The statute never contemplated crippling our courts by disqualifying a judge, solely on the basis of a bias (or state of mind, 255 U.S. 42, 41 S.Ct. 236, 65 L.Ed. 481) against wrongdoers, civil or criminal, acquired from evidence presented in the course of judicial proceedings before him. Any other construction would make the statute an intolerable obstruction to the efficient conduct of judicial proceedings, now none too speedy or effective."

The court in the Craven case, supra, went on to state, at page 608: "If, as happened in many of the cases reported, this statute is permitted to be used by overzealous counsel, scanting their professional duty to the public weal and to the court as the protector of the public right, as a method of procuring delay (U. S. v. Fricke, D.C., 261 F. 541), and in many instances a new trial before a judge who must approach, *de novo*; problems already considered by another judge

(Ex parte American Steel Barrel Co., 230 U.S. 35, 44, 33 S.Ct. 1007, 57 L.Ed. 1379) the statute will leave immune from attack only the amorphous dummies reprobated by Mr. Justice McReynolds as unbecoming receptacles for judicial power ( [Berger v. U. S.] 255 U.S. [22] 43, 41 S.Ct. [230] 236, 65 L.Ed. 481). Only the timid and the incompetent, if there be now or hereafter any such on the federal bench, will be free from attack under this statute."

In another frequently cited case: In re Linahan, 138 F.2d 650, at page 653, the Court of Appeals for the Second Circuit stated: "But, just because his fact-finding is based on his estimates of the witnesses, of their reliability as reporters of what they saw and heard, it is his duty, while listening to and watching them, to form attitudes towards them. He must do his best to ascertain their motives, their biases, their dominating passions and interests, for only so can he judge of the accuracy of their narrations. He must also shrewdly observe the strategems of the opposing lawyers, perceive their efforts to sway him by appeals to his predilections. He must cannily penetrate through the surface of their remarks to their real purposes and motives. He has an official obligation to become prejudiced in that sense. Impartiality is not gullability. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions."

I perceive no good purpose in prolonging this memorandum by citing other cases in addition to those which I have already noted. The cited authorities make my decision clear. Suffice to say, that whatever opinions I may have as to the affiant, Darrow, they are opinions which have been derived *coram judice;* they are not derived from the "personal bias or prejudice" which the statute seeks to control. I must hold, therefore, that the facts contained in paragraph 6 of Darrow's affidavit are insufficient to invoke the action contemplated by Section 144.

There remain the facts alleged in paragraph 9 of Darrow's affidavit. The affiant therein manufactures the Court's insistence, after prolonged litigation, that all of the terms of the Plans of Reorganization be expeditiously consummated, into an alleged bias in favor of Kulp and Johnson, the respondents in Darrow's intervention petition. These remarks were made on September 23, 1954, at which time I ordered that the trustee issue his checks, forthwith, to Kulp and the estate of Johnson, which I previously had specifically ordered done on July 23, 1954, but which contrary to my orders, had not as yet been done on September 23. This order to make payment was issued pursuant to my order of that day vacating the supersedeas order which previously had been entered by Judge Perry. The supersedeas order being vacated, it was necessary that the terms of the Plans of Reorganization be carried out completely, instanter. Such being the case, the order of the Court about which the affiant complains was issued pursuant to my opinion as to the law applicable to the issue then pending and, as such, cannot now be attacked as being an example of the court's alleged prejudice in favor of Kulp and Johnson. Cf. Ex parte American Steel Barrel (Seaman), supra; Tucker v. Kerner, supra. As has been said, since the date on which these orders were issued, I have been corrected by my superiors on the Court of Appeals, and any injustice that the affiant may have suffered from my erroneous opinions has been fully rectified. I hold, therefore, that the facts alleged in paragraph 9 of Darrow's affidavit are clearly insufficient as a matter of law.

In reaching the conclusions expressed in this memorandum, I am not unmindful that Darrow's affidavit could be denied summarily since it was not filed within the time prescribed by the statute. However, since the allegations contained in Darrow's affidavit are so completely insufficient to warrant the appli-

cation of Section 144 of the Judicial Code, I am disposed to rest my decision on the merits of the charge rather than on any "technical" grounds. This is especially so because of the very nature of the matter presented to the Court.

For the reasons stated, petitioner Darrow's affidavit is hereby rejected and denied since it affirmatively appears that the facts alleged therein are insufficient in law to invoke the action contemplated by Section 144 of Title 28, United States Code.