287 F.2d 667
 UNITED STATES of America, Plaintiff-Appellee,
v.
SHOTWELL MANUFACTURING COMPANY, a corporation, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Byron A. CAIN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harold E. SULLIVAN, Defendant-Appellant.
 Nos. 12723-12725.
 United States Court of Appeals Seventh Circuit.
 February 8, 1961.
 Rehearing Denied April 11, 1961.
 
 COPYRIGHT MATERIAL OMITTED George B. Christensen, William T. Kirby, Chicago, Ill., Neal J. McAuliffe, Chicago, Ill., Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel, for appellants.
 Charles K. Rice, Asst. Atty. Gen., Tax Division, John J. McGarvey, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., for appellee.
 Before DUFFY and SCHNACKENBERG, Circuit Judges, and GRUBB, District Judge.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Harold E. Sullivan, Byron A. Cain and The Shotwell Manufacturing Company, a corporation, defendants, have appealed from judgments of the district court entered May 22, 1959, based on a jury verdict entered in 1953, adjudging each of them guilty of attempting to defeat and evade the payment of taxes owing by Shotwell in violation of 26 U.S.C. § 145(b), Int.Rev.Code of 1939.[1]
 
 
 2
 These judgments were entered by the district court following a hearing held pursuant to an order of the United States Supreme Court. United States v. Shotwell Mfg. Co., 355 U.S. 233, 246, 78 S.Ct. 245, 2 L.Ed.2d 234. By the same order the Supreme Court vacated our judgment reversing prior judgments of the district court based on said verdict, United States v. Shotwell Mfg. Co., 7 Cir., 225 F.2d 394, 406.
 
 
 3
 We held on the prior appeals that it had been shown, at a pretrial hearing on a motion of defendants to suppress certain evidence, that a valid, timely, voluntary disclosure by defendants had been made. After the government petitioned the Supreme Court for certiorari to review our decision, it filed a motion to remand on the ground of newly discovered evidence, and in support of its motion filed the affidavits of defendant Frank J. Huebner[2] and H. Stanley Graflund, which the Court found contradicted the testimony on behalf of defendants on the suppression hearing. At page 240 of 355 U.S., at page 250 of 78 S.Ct. the Supreme Court stated that the new evidence cast the darkest shadow upon the truthfulness of the disclosure testimony given by or on behalf of the defendants and entailed an attempt to perpetrate a fraud upon the courts. At page 241 of 355 U.S. at page 250 of 78 S.Ct., the need of a remand to the district court for a full exploration was indicated. At page 245 of 355 U.S., at page 253 of 78 S.Ct., the Court directed that, in the further proceedings in the district court, the additional evidence to be presented be confined to the suppression issue and that on that issue the district court make such new findings of fact as may be appropriate, including findings on the question of the timeliness of the alleged disclosure.[3]
 
 
 4
 At the hearing upon remand, the district court heard the testimony of government witnesses Huebner, Graflund, Ernest C. Wright and Joseph M. Lima and the testimony of defendant Cain and several other defense witnesses. Sullivan and Leon J. Busby did not testify, although Busby did testify at the original suppression hearing.[4] The court entered an order which included a comprehensive finding of facts. The trial judge analyzed the testimony of the various witnesses and found specifically, inter alia:
 
 
 5
 "* * * the evidence is over-whelmingly clear that not only were substantial sums of black-market money paid to Shotwell as premium payments by Lubben[5] during 1944, 1945 and 1946 totaling between three and four hundred thousand dollars, but also that the greater part of this so-called black-market money was appropriated by Cain, Huebner and Sullivan for their own personal use.
 
 
 6
 * * * * * *
 
 
 7
 "* * * Busby, Shotwell's accountant, stated that he went to Sauber[6] in January, 1948, and disclosed to him that Shotwell had failed to include as income the black-market payments received from Lubben when it made its tax returns for the years 1945 and 1946. Busby stated at the first suppression hearing that he was prompted to make the disclosure to Sauber at this time because he first learned of the Lubben-Shotwell over-ceiling transactions from Graflund when the two were together on a train coming from New York to Chicago. Graflund on several occasions prior to the supplemental suppression hearing supported Busby's statement in this regard, but on the supplemental suppression hearing he testified that, in stating that he imparted this information to Busby in January, 1948, he was in error and that upon further consideration and reflection, he is now convinced that he did not tell Busby about the Lubben-Shotwell transactions until after Agent Krane had made a visit to the Shotwell plant on June 21, 1948.
 
 
 8
 * * * * * *
 
 
 9
 "It was not until some time in July, 1948, however, that any concerted effort was made by these defendants to make up a so-called voluntary disclosure. It is undoubtedly true that Cain, by reason of the lack of any records in Shotwell's possession, felt required to accept Lubben's figures of black-market transactions although he believed they were exaggerated. On the other hand, the alleged offsetting black-market payments made by Shotwell to wash out, so to speak, black-market receipts were, as represented to the Supreme Court by the affidavits of Huebner and Graflund, concocted `out of thin air.' These figures were made up at a meeting in Busby's office in July, 1948, and at the Belden Stratford Hotel during that month, where Shotwell's representatives, including Cain, Huebner and Graflund, remained for some days in attempting to devise the amount of the black-market receipts to be offset by fictitious black-market disbursements in substantially the same amount.
 
 
 10
 "* * * Suffice it to say that the evidence clearly establishes that only a relatively small percentage of the black-market payments made by Lubben to Shotwell were utilized for the purchase of raw corn, * * *. When these defendants presented the so-called voluntary disclosure by way of written computations of black-market income and black-market outgo, the amounts allegedly paid for raw materials were fictitious figures selected by Cain with full knowledge that they were without verity and merely inserted in the record in order to wash out, so to speak, the black-market receipts except for some $6,000. I find, therefore, that any so-called voluntary disclosure to Sauber by Busby and Cain prior to June 21, 1948, if it be such within the purview of the voluntary disclosure doctrine, did not precipitate the investigation of the Lubben-Shotwell transactions by Krane and that it was not until after Krane's visit to Shotwell's plant that figures were presented to the Government allegedly showing the black-market receipts of Shotwell and Shotwell's alleged premium payments for raw materials.[7] * * *"
 
 
 11
 Accordingly the court found "* * * that fraud permeated the showing made by these defendants before me at the original suppression hearing, as well as at the trial and the supplemental hearing, and I find that no honest, bona fide voluntary disclosure to any government official ever was made by Shotwell or these defendants with respect to Shotwell's 1945 and 1946 taxes as contemplated by the voluntary disclosure policy in existence at the time. A dishonest and false disclosure cannot be held to by a timely voluntary disclosure."
 
 
 12
 1. In United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562, where defendant made a motion for a new trial based on newly discovered evidence, said to prove that one Goldstein, a government witness, had perjured himself, the trial judge found that none of the affidavits offered in support of the motion showed perjury on the part of Goldstein and concluded that a new trial was not warranted. A reversal by our court of his action was set aside by the Supreme Court, which held, at page 111, of 327 U.S., at page 466 of 66 S.Ct., that, while we might intervene when findings of fact are wholly unsupported by evidence, we should never do so where it does not clearly appear that the findings are not supported by any evidence.
 
 
 13
 Of course, the Supreme Court has not passed upon the correctness of the result we reached on the record before us on the former appeals, 225 F.2d 394. We are now required to again pass upon defendant's motion to suppress, based, however, upon a record since supplemented by the proceedings upon remand. Therefore, giving proper recognition to the additional findings of fact of the district court, we proceed to a disposition of all contentions now awaiting resolution.
 
 
 14
 In accordance with the findings of the district court, we are required to, and do hereby, hold that the defendants' motion to suppress evidence was properly denied.
 
 
 15
 2. This conclusion is not impaired by defendants' contention that the government failed to show that the decision of this court was based upon a perjurious record attributable to fraud of the defendants, nor their assertion that the "story" advanced by Huebner and Graflund "was so startling and dramatic that the Court noted a doubt as to whether the affidavits might be `products of fraud'." The district court on remand clearly considered relevant testimony of the defendants untrue and in effect absolved the affidavits of Huebner and Graflund of the charge of fraud.
 
 
 16
 We hold that the district court on remand proceeded responsively to the Supreme Court's direction and that its use, at page 235 of 355 U.S., at page 247 of 78 S.Ct., of the words "perjurious record" obviously refers to the "shadow upon the truthfulness of the disclosure testimony" given by or on behalf of defendants, as referred to, at page 240 of 355 U.S., at page 250 of 78 S.Ct. This disclosure testimony was fully discussed by the district court in its findings on remand.
 
 
 17
 3. Defendants insist that the district judge erred in not having recused himself from the 1958 proceedings. Subsequent to the trial the judge made certain statements as to the credibility of witnesses, the nature of disclosures and inferences which he drew from the evidence. Defendants charge that it appears that he had fixed views on the subject of disclosure. However, it is not contended that he entertained personal — as distinguished from judicial — bias or prejudice against defendants. Therefore, we hold that his statements were insufficient as a matter of law to require an order of recusation. Tucker v. Kerner, 7 Cir., 186 F.2d 79, 84, 23 A.L.R.2d 1027.
 
 
 18
 4. It is maintained that the district court acted arbitrarily in denying defendant Cain's motion for severance, during the proceedings on remandment. His motion was supported by the affidavits of two physicians and had to do with the state of his health. The record shows that, after hearing argument on the motion, the court ordered Cain to submit to physical examination at the Public Health Service facility in Chicago. Thereafter the chief of the medical service, Dr. I. N. Zigler, submitted to the court a report of his examination and recommended a postponement of the hearing for six months "for maximum possible improvement and stabilization of Mr. Cain's cardiac status." Such postponement was had. Several months later Dr. Zigler reported to the court that Cain's appearance for four or five hours a day would not unreasonably exceed his level of tolerance. Cain renewed his motion and submitted affidavits of two physicians. In view of a conflict in the medical testimony, by agreement of counsel, the court appointed two physicians to examine Cain and advise the court as to his ability to attend the further hearing. That was done and their reports are in the record. The court denied a motion for further postponement. The reports justified this action.
 
 
 19
 We cannot say that the court's action was arbitrary or the result of an abuse of discretion.[8]
 
 
 20
 5. In July 1957, almost four years after the verdict, appellants, alleging newly discovered evidence, filed amended motions to dismiss the indictment and in arrest of judgment, for the purpose of challenging the arrays of the grand and petit juries on the ground that the panels were illegally constituted.
 
 
 21
 Defendants contend that the arrays of the grand jury and the petit jury were improperly selected because "volunteers are not competent as jurors in Illinois and therefore were not competent federal jurors in 1952 and 1953," and "the jury commissioner delegated his non-delegable duties."
 
 
 22
 Rule 12(b) (2) and (3), Federal Rules of Criminal Procedure,[9] reads:
 
 
 23
 "(b) The Motion Raising Defenses and Objections.
 
 
 24
 * * * * * *
 
 
 25
 "(2) Defenses and Objections Which Must Be Raised.
 
 
 26
 "Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. * * * Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. * * *
 
 
 27
 "(3) Time of Making Motion.
 
 
 28
 "The motion shall be made before the plea is entered, but the court may permit it to be made within a reasonable time thereafter."
 
 
 29
 In denying the motions, which ruling defendants now say was erroneous, the district court held that defendants "failed to establish any sufficient grounds which [would] justify the granting of relief from the waiver." However, exhibiting an extraordinary desire to cover all points, he then found that the jurors, grand and petit, possessed the necessary legal qualifications for jury service and that no one was excluded because of race, color, economic status, political conviction, geographical location, religious beliefs or social status, and that there was no showing that the use of volunteers to the extent of one member of the petit jury and five members of the grand jury, precluded defendants from having a grand jury or a trial jury truly representative of a cross-section of the community, or that the use of volunteers resulted in the intentional or negligent exclusion or discrimination against any individuals or groups.
 
 
 30
 Inasmuch as defendants have not shown that these findings are without support in the record or that they were actually prejudiced by the method by which the jurors were selected, we hold that their motions were properly denied. Dow v. Carnegie-Illinois Steel Corp., 3 Cir., 224 F.2d 414, 427. See United States v. Smith, 7 Cir., 253 F.2d 95. Cf. Glasser v. United States, 315 U.S. 60, 86, 62 S.Ct. 457, 86 L.Ed 680.
 
 
 31
 6. Defendants contend: "If the evidence taken in the light most favorable to the Government fails to prove an essential element of the crime charged, no matter what else it may have tended to prove, the convictions must be reversed." This amounts to a challenge of the sufficiency of the evidence to support the verdict. We hold that the evidence, viewed in the light most favorable to the government, is sufficient to sustain the verdict.
 
 
 32
 7. Defendants assert that the district court should have granted a new trial in 1953 for additional errors committed at the trial.
 
 
 33
 First, we hold that, before the jury, a certain part of Cain's testimony at the suppression hearing was not improperly introduced, because it was in effect an admission against interest that Shotwell's unreported black-market receipts approximated $400,000.
 
 
 34
 Secondly, defendants charge that the court should have excluded certain documents described as "disclosure recapitulations", which were offered by the government on the cross-examination of Cain and also in rebuttal. Defendants insist that these documents were inadmissible because they constituted an offer in compromise. However they were not executed for that purpose, as Cain testified at the time that Shotwell was ready and willing to pay the full amount of tax claimed by the government and that it would endeavor thereafter to recover what it could. We hold that this evidence was admissible. A distinction is drawn between an offer to do something in furtherance of a compromise, which is held to be inadmissible, and independent admissions of fact, which may be admitted. Cf. Cooper v. Brown, 3 Cir., 126 F.2d 874, 878.
 
 
 35
 Thirdly, defendants insist that the court erred in denying their motion to strike certain parts of Lubben's testimony and various exhibits, including books of account, introduced by the government. They argue that allowing all the testimony as to over-invoice payments during the entire two years tended to convict the individual defendants of evasion of personal income taxes and confused questions of corporate and individual income.
 
 
 36
 Both sides refer to Lubben's testimony as to shipments of candy by Shotwell to Lubben, and admit that he testified that when he paid over-ceiling cash premiums to Huebner, Shotwell's general manager, Huebner counted the currency into three piles, saying one was for himself, one for Cain, and one for Sullivan.[10] Lubben's books were admitted into evidence and defendants contend that they were not regularly kept so as to import verity according to legal standards. Defendants also assert that the testimony of Lubben completely destroyed the evidentiary basis for the books as showing payments of overages to Shotwell. This is not a case where a cause of action was based upon the books of account and hence precise compliance with the law as to the keeping of records was not required. The issues in this criminal case were to be decided by the jury upon all of the relevant evidence, which included, inter alia, these books, which admittedly were not perfect. The weight to be given to them, in connection with the other evidence, was for the jury to decide. The books were offered as proof of a part of a factual situation and were to be considered for what they were worth. There was no error in refusing to strike this evidence.
 
 
 37
 We are convinced that these attacks on Lubben's testimony and his books of account, as evidence, relate to the weight to be given to evidence rather than its admissibility. No error is shown in these respects.
 
 
 38
 Fourthly, defendants complain that their cross-examination of Lubben was unreasonably curtailed.
 
 
 39
 Our examination of the record refutes this complaint. While the extent of cross-examination is within the sound discretion of the trial court, Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624; Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680, the record demonstrates that, not only was there no abuse of discretion here, but the court allowed extreme latitude to all three defense counsel who cross-examined Lubben, over a period of four days. It is obvious that the court imposed limitations upon inquiries which related to irrelevant transactions of Lubben with other parties.
 
 
 40
 Fifthly, defendants contend that there was error in the giving and refusal of instructions.
 
 
 41
 They say that fundamental errors were carried into the instructions which "specifically told the jury they could take Lubben's so-called records into account in determining whether the overages constituted income to Shotwell".
 
 
 42
 They say that the "crushing effect of the charge can be appreciated only by reading it in its entirety". We have read it. The court was engaged in informing the jury as to the contentions of the parties and he made it plain that that was the purpose of his statement. We believe that he succeeded in making a simple and clear explanation which was understandable to the jurors. While admitting that the court stated that he was merely reciting the government's contentions, defendants insist that the court nowhere made any clear and understandable delineation, as he easily could and should have, between what was strictly government contention and what he was assuming as an undisputed fact or an undisputed principle of law. We have no reason for the assumption, implicit in defendants' contention, that there was such a lack of intelligence upon the part of the jurors as is needed to conclude that they must have disregarded the orderly sequence and division of the judge's charge. United States v. Bruswitz, 2 Cir., 219 F.2d 59, 63, certiorari denied 349 U.S. 913, 75 S.Ct. 600, 99 L.Ed 1247.
 
 
 43
 Defendants criticize this part of an instruction:
 
 
 44
 "* * * It is the taxable income of individuals, partnerships and corporations which forms the principal revenue for the support of the Government. The wilful violation of the income tax laws of the land is, therefore, a matter of great concern to the Government, and those guilty of such an offense and proven to be guilty should be speedily found guilty by a jury chosen in such trial."
 
 
 45
 They say that it reads like a prosecutor's argument. However, the quoted language is lifted out of context. The following language preceded that quoted:
 
 
 46
 "I take it, members of the jury, that it is not necessary for me to remind you that this case is important. It is important to the Government. It is important to these defendants." (Italics supplied.)
 
 
 47
 We are certain that the jury understood that the court was merely impressing it with the important duty which the jury was called upon to perform and its consequent effect upon both the government and the defendants on trial. We see no error here.
 
 
 48
 Defendants charge that the court's instruction relative to the disclosure claimed to have been made by the defendants was grossly prejudicial. On that issue defendants tendered this instruction:
 
 
 49
 "In determining whether the defendants, Byron A. Cain, Harold E. Sullivan, Frank J. Huebner and The Shotwell Manufacturing Co., or any one or more of them had a specific intent to defeat or evade taxes owning to The United States from the corporate defendant at the time the tax returns of the corporate defendant for the years 1945 and 1946 were filed, you may take into account, together with all other evidence bearing on the issue of intent, the actions of the defendants pursuant to the voluntary disclosure policy."
 
 
 50
 The court endorsed thereon the words "Granted in Substance". It however gave to the jury instead, the following instruction:
 
 
 51
 "The fact that the defendants may have assumed that their disclosure granted immunity to the Shotwell Company, and to the individual defendants herein, is no defense in this proceeding, and as I have stated, and I repeat again, it is only material in so far as it may bear upon the intent of the individual defendants, or the intent of the Shotwell Company to violate the income tax laws, and their good faith, or lack of good faith in doing that, which they did do in reference to their alleged disclosure, and in so far as it may have a bearing upon any of the acts, admissions, conduct, et cetera, which may have taken place during such alleged disclosure."
 
 
 52
 Both the tendered instruction and the given instruction were meant to submit to the jury the question of defendants' intent in the matter. We find no basis for error that the court gave to the jury but one of them, which itself was correct.
 
 
 53
 We hold that no error was committed in the court's refusal to grant a new trial to defendants.
 
 
 54
 8. In their briefs, defendants Shotwell and Cain contend that it was the duty of the district judge to order a new jury trial, when, on the hearing on remandment, he found Lubben's testimony was "exaggerated". This simple as well as direct approach to their objective is based upon their characterization of the word "exaggerated" as a mere euphemism for perjury. The government, in its brief, contents itself by ignoring this contention. While we do not ignore it, we find it unconvincing. The court did state on remandment.
 
 
 55
 "* * * that Lubben may have exaggerated the amounts of the payments that he and his confederates made to Shotwell is entirely probable."
 
 
 56
 We cannot say that this amounts to a charge of perjury. Suffice it to say that Lubben's testimony was not the only evidence to support the verdict and the judgments. Moreover his credibility was a question for the jury. The court did not err in not ordering a new trial because of these facts.
 
 
 57
 9. In this court a separate brief has been filed by defendant Harold E. Sullivan.[11] He was a director and general counsel for Shotwell at a salary of $600 a week. On July 1, 1946 he became executive vice-president. He practiced law and was a master in chancery of an Illinois court. He and his family owned 20%, and later 33%, of Shotwell's stock.
 
 
 58
 In September or October 1946, in Sullivan's office on Dearborn Street, Chicago, Lubben talked with Sullivan, who told him that he wanted no checks and asked whether the cash transactions were being recorded in Lubben's books. He was assured that they were not. Sullivan said, "Well, Dave, you know how it is. You have * * * a farm in New Jersey. This money I have been using in my farm. * * * I am getting a new driveway, * * *. That is the only way I can do it today, with the tax situations the way they are."
 
 
 59
 Both Cain and Sullivan repeatedly impressed upon Lubben that the corporation was not reporting the cash receipts as income, and that no records of his cash payments should be kept. Lubben did in fact make and retain some record of many of the payments.
 
 
 60
 Martin A. Ericson, Shotwell's shipping superintendent, testified that Sullivan was present in March 1946 when there was a conversation to the effect that, when shipping candy to Lubben, the name "ABC Company" was to be put on the bills of lading as shipper instead of Shotwell.
 
 
 61
 Howard Roser, comptroller of Shotwell, testified that the monies put in a cash box he gave out to Sullivan, Cain and Huebner.
 
 
 62
 As a witness, Sullivan denied that he personally received any of the cash paid by Lubben.
 
 
 63
 The government contends that, viewing the record in the light most favorable to the government, there is ample evidence to support the verdict as to Sullivan. On the other hand, Sullivan contends that the government's case against him was based upon a single alleged admission which the government's principal witness Lubben said Sullivan made to him in Sullivan's office.[12] We are of the opinion that the jury was warranted in finding from the direct and circumstantial evidence in the record, and the inferences which might be reasonably drawn therefrom, that Sullivan's acts, statements and his status in the management of Shotwell, coupled with his knowledge of its operations with Lubben, made him aware of and a participant in the acts constituting the offenses charged in the indictment.
 
 
 64
 10. Certain evidence was admitted but the jury was instructed by the court not to consider it against Sullivan. This evidence related to the "three-pile testimony", the recapitulation statements and extracts from Cain's testimony at the suppression hearing. When this evidence was admitted the court admonished the jury that it was not to be considered against Sullivan. From time to time, the court repeated this admonishment at the request of counsel for Sullivan. The court also in its final instructions informed the jury:
 
 
 65
 "Any statement or act of any of the defendants not in the presence of another defendant is not binding upon the absent defendants, even though one or more of the defendants were mentioned in the conversation, nor are such matters competent evidence against any other defendant not present. I have limited, you will observe, certain evidence during the trial, from time to time, as being competent only as to certain defendant or defendants, that is, by way of example, what Mr. Huebner, or Mr. Cain may have said or done in the absence of Mr. Sullivan, would not be binding or competent as to Mr. Sullivan. * * *"
 
 
 66
 These limiting instructions are clear. It must be presumed that the jury conscientiously observed them. United States v. Harris, 7 Cir., 211 F.2d 656, 659, certiorari denied 348 U.S. 822, 75 S.Ct. 34, 99 L.Ed. 648.
 
 
 67
 11. Sullivan argues that it was error for the court to instruct the jury as follows:
 
 
 68
 "Under our laws, every defendant who is charged with a crime is presumed to be innocent. Now, that presumption remains with him throughout the entire trial, until that time, if that time is reached, that the Government has established his guilt beyond a reasonable doubt. The defendants here are entitled to the benefit of that presumption, and it is for you to determine, members of the Jury, whether or not the guilt of any of the defendants has been established beyond a reasonable doubt."
 
 
 69
 While there is language in this instruction which was termed "inept" in Lurding v. United States, 6 Cir., 179 F.2d 419, 422, "unless accompanied by some instruction that directs a consideration of all the evidence", here the jury was repeatedly directed to consider all the evidence.[13]
 
 
 70
 We have considered all of the alleged errors urged by defendants and we find that none of them would justify reversal. On the complete record now before us, we are required to affirm the judgments from which appeals have been taken by Sullivan, Cain and Shotwell.
 
 
 71
 Judgments affirmed.
 
 
 
 Notes:
 
 
 [1]
 Harold E. Sullivan was sentenced to prison for 3 years and fined $2500 on each of counts 1 and 2, the terms of imprisonment to run concurrently. Shotwell was fined $10,000 on each count and Byron A. Cain was sentenced to imprisonment for 3 years and fined $5,000 on counts 1 and 2, the terms of the imprisonment to run concurrently
 
 
 [2]
 Huebner had been sentenced to 3 years imprisonment and fined $2500 on each count, the terms to run concurrently
 
 
 [3]
 While, upon oral argument in this court on the present appeals, government counsel expressly stated that the government makes no contention that the disclosure of defendants was untimely, the Supreme Court, at page 245, note 21, of 355 U.S., at page 253 of 78 S.Ct., pointed out that new evidence of timeliness is relevant to the question of whether a bona fide disclosure was in fact ever made
 
 
 [4]
 225 F.2d 394, 399
 
 
 [5]
 David G. Lubben, a witness on behalf of the government
 
 
 [6]
 Ernest Sauber, chief deputy collector of internal revenue in Chicago
 
 
 [7]
 The district court at this point added in its order the following:
 "This is not only the Court's conclusion based upon the entire record, but it necessarily was the jury's conclusion on the record at the trial in that the jury was expressly instructed that, if the overceiling payments received by Shotwell were expended for raw materials in carrying on its candy manufacturing business, then its verdict must be one of not guilty."
 
 
 [8]
 It should be noted that Cain's continued presence at the hearing of the motion for suppression was not required by Rule 43 of the Federal Rules of Criminal Procedure. 18 U.S.C.A., Rule 43
 
 
 [9]
 18 U.S.C.A., Rule 12(b) (2) and (3)
 
 
 [10]
 Certain evidence offered by the government, such as the "three-pile" testimony was not admitted as to SullivanPost 14.
 
 
 [11]
 While much of this opinion has obviously referred to all of the defendants, this division relates principally to defendant Sullivan
 
 
 [12]
 The date of this admission was first given as February 14, 1946 and later corrected by the witness Lubben and fixed as September or October, 1946,ante 13.
 
 
 [13]
 For instance, the court instructed the jury:
 "On the other hand, if you do not have after a full and fair consideration of all the evidence and testimony, an abiding conviction of the guilt of any defendant charged herein, amounting to a moral certainty, then the guilt of such defendant has not been established as the law requires, and it would be your duty to return a verdict of not guilty as to such defendant or defendants.
 * * * * *
 "Direct proof of wilful intent is not necessary. * * * It is a question of fact, members of the jury, to be determined from all of the evidence.
 * * * * *
 "* * * The truth as to when the overages began, their duration, and their amount is a matter, and an important matter, which you will have to determine from all the evidence introduced.
 * * * * *
 "Well, members of the jury, you will have to determine the true, the believable and the plausible and reasonable facts in that regard from all the evidence which you have heard. * * *
 * * * * *
 "The question is, therefore, members of the Jury, whether you are convinced from all the evidence that there were taxes due the Government for the years in question in amounts substantially higher that those reported and paid by the corporation to the Government, and whether you are convinced from all the evidence, beyond a reasonable doubt, that there was a wilful attempt by the defendants, or any of them in such years to evade or defeat any substantial part of such income tax by filing or causing to be filed a false and fraudulent return for the corporate defendant for the years in question.
 * * * * * *
 "* * * You have a right to make use of your own common observations, and experience, as men and women in the affairs of life, and consider all the evidence in the light of your common observations and such experience, and ascertain where the truth may be on any material fact in this case.
 * * * * *
 "* * * If you find upon an impartial consideration of all the evidence in the case that the evidence supports and sustains two reasonable theories and that one of such theories is consistent with the guilt of the defendant, and that the other such theory is consistent with the innocence of the defendant, then the law makes it your duty to adopt the theory that is consistent with the innocence of said defendant and find him not guilty."