James C. SIMMONS, Appellant,

v.

UNITED STATES of America.

No. 13620.

United States Court of Appeals
Third Circuit.

Submitted Nov. 2, 1961.

Decided April 13, 1962.

72

James C. Simmons, pro se.

David M. Satz, Jr., U. S. Atty., Frank J. Ferry, Asst. U. S. Atty., Newark, N. J., for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and FORMAN, Circuit Judges.

FORMAN, Circuit Judge.

John C. Simmons, the appellant herein, was indicted in the United States District Court for the District of New Jersey, with John Gregory Marion, on two counts for violation of the narcotic laws. 21 U.S.C.A. § 174 and 26 U.S.C.A. § 4705(a). He pleaded not guilty and was tried alone to the court and a jury.

At the trial two Treasury Agents of the Bureau of Narcotics testified in substance that they made the acquaintance of the appellant at his motel, introducing themselves as having been sent to him by a mutual acquaintance in Philadelphia; that, under the pretext that they were racketeers, they spoke to him concerning the prospect of installing prostitutes in his motel; that the appellant rejected the idea of using his motel for such a purpose, but that he suggested that a house on an adjoining property that belonged to him, and which he contemplated fixing up, could be used better for that purpose; that they also spoke to him concerning the possibility of purchasing a tavern in the neighborhood; that appellant took them to two taverns that he thought could be purchased; that during the course of one of several meetings the agents had with him, one of them stated that they had had some trouble in the purchase of narcotics which had turned out to be a poor grade

of heroin; that the appellant thereupon volunteered that he had some "connections" in Philadelphia and New York, but that he would have to look them up; one of the agents then told him that they were interested and arrangements were made for all three to go to Harlem, but appellant could not obtain any drugs there, except some marijuana cigarettes, one of which he smoked on the return journey; that subsequently, pursuant to a telephone call from the appellant to meet him they called on him and he advised them that he could purchase some pure heroin from a connection in New York, but that he must have money in advance and go alone and that later he would introduce them to his connection; that he was given $1,000 by the agents; that later he told them that he had gone to New York where he met an acquaintance to whom he gave $600 to make a purchase of heroin; that the acquaintance had turned the money over to a purported seller, who had disappeared with it without delivering the drug; that appellant returned the balance of the $400 to the agents.

The agents also testified that upon their request to point out the one to whom appellant gave the money he again accompanied them to Harlem and introduced them to his acquaintance who verified appellant's statements and described the missing seller for whom the agents searched in vain; that following a few more visits by the agents to the appellant he advised them that he had something for them; that they visited the appellant at his motel and he produced a small wax paper wrapped package which he said contained pure heroin, which was priced at $400; that it was agreed that the agents would have the contents of the package tested; that they told appellant that it turned out to be weak heroin but that arrangements were made by the agents with the appellant to be introduced to the source from which it came; that later following a telephone call from the appellant they proceeded to the motel where the appellant introduced them to one, John Gregory Marion,[1] who, he stated, was his New York connection.

The agents further testified that they told Marion in the presence of the appellant that the heroin which had been delivered to them by the appellant was of a very poor grade but that if he had any other connection they would like to meet him; that Marion told them that his connection in New York could get them pure heroin in any amount they wanted; that subsequently they told appellant that they were engaged in the purchase of heroin and that they expected a delivery of it at his motel; that the motel was used by the agents as a meeting place when deliveries of narcotics were made to them; that appellant was told by the agents that he would be cut in on the profits on the deliveries if things went properly to the extent of as much as $5,000.

The appellant testified in his defense to the effect that the agents, making themselves known to him as Mike and Gene, approached him much in the manner that they had described but that he completely rejected their proposal to use any of his premises for the purposes of prostitution; that he did, however, take them to two taverns that he thought could be purchased by them; that they visited him frequently, using his motel premises for the purpose of making telephone calls; that one of the agents initiated the subject of narcotics, telling him that he needed some dope but that the agent told him he need not have anything to do with it except to arrange for a supply which he and his colleague required as they had many customers for it in various cities; that the agents persisted in requesting him to make some kind of a connection for them; that he finally succumbed to their requests and accompanied them to New York to look for some one who would sell them heroin but the trip proved futile; that he did

1. The co-defendant named in the indictment with appellant who pleaded guilty and was sentenced to seven years on each of the two counts to run concurrently.

communicate later with an acquaintance who told him he would be able to take care of him and the agents provided him with $1,000 to make a purchase, but that he lost $700 (the agents testified to $600) in trying to obtain heroin; that he so informed the agents telling them that he would be responsible for the lost money; that he was frequently thereafter importuned by the agents to find them a source of heroin and he finally communicated with Marion to whom he gave $200 and received from him the package which he turned over to the agents; that he estimated that the agents were at his motel 35 or 40 times between June 6, 1957 and the date of his arrest, January 23, 1958; that during that time the agents gave him $90 to cover telephone calls they had made and that his attempts to obtain heroin for them were as personal favors without any suggestion of reward to him except that the agent he knew as Mike said to him shortly before his arrest that if everything went all right he would have enough to fix up the driveway to his motel which was in need of repair.

The jury brought in a verdict of guilty on both counts. On April 8, 1958 he was sentenced to ten years on each count to run concurrently. He was represented by counsel throughout and took no appeal.

Now, acting without counsel, he has filed a motion to vacate his sentence under 28 U.S.C. § 2255 [2] and Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C. [3] Concurrently with that motion he filed an affidavit of bias and prejudice against the Judge who presided at his trial moving for his withdrawal from consideration of the motion to vacate the sentence.

The Trial Judge disposed of the affidavit and motion to withdraw in an opinion in which he dismissed it and denied the motion. In a separate opinion he also denied the motion under § 2255 to vacate the sentence.

Orders were entered pursuant to the opinions and it is from these that appellant seeks review.

– I –

The appellant is ambivalent in the argument he offers to sustain his affidavit of bias and prejudice. In his reply brief he poses this question:

"Whether, in a section 2255 proceeding the District Judge erred in rejecting a timely filed 'Affidavit of Prejudice and Bias with Motion to Withdraw', having improperly construed and mistakenly considered same as an 'Application for Disqualification' under Section 144?"

At other places in his main and reply briefs he appears to contend that his

2. The pertinent part of 28 U.S.C. § 2255 provides:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."

3. Appellant relies on that part of Fed. Rules Cr.Proc. rule 35, which reads:

"The court may correct an illegal sentence at any time. * * * "

affidavit met the standards set by 28 U.S.C. § 144.[4]

■ Casting aside the technical objections of the Government that the filing of the affidavit under § 144 is untimely and inappropriate in this proceeding and meeting the issue posed by its filing head on, many of the assertions and cases cited by appellant concerning the action required by that statute to be taken by the judge against whom the affidavit is filed are indisputable. For example, it is so, as appellant submits that it is not within the province of the Trial Judge to pass upon the good faith of the defendant if the affidavit is sufficient in form. Morris v. United States, 26 F.2d 444, 448 (8 Cir. 1928). And the allegations in the affidavit must be taken as true, and are not subject to controversy in any manner. Berger v. United States (1921), 255 U.S. 22, 41 S.Ct. 230, 65 L. Ed. 481.

On the other hand the judge against whom an affidavit under § 144 is filed must pass upon the legal sufficiency of the facts alleged. Green v. Murphy, 259 F.2d 591, 593 (3 Cir. 1958).

■ If the reasons and facts, regardless of their truth or falsity, fairly support "the charge of a bent of mind that may prevent or impede impartiality of judgment" then it is his duty to allow the affidavit and withdraw. Berger v. United States, supra. It is equally his duty to deny the affidavit on insufficient grounds as to allow it on sufficient allegations. Tucker v. Kerner, 186 F.2d 79, 85, 23 A.L.R.2d 1027 (7 Cir. 1950). In Ex parte American Steel Barrel Co.,

230 U.S. 35, 43–44, 33 S.Ct. 1007, 57 L.Ed. 1379 (1913) the Court said:

"The basis of the disqualification is that 'personal bias or prejudice' exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. It is a provision obviously not applicable save in those rare instances in which the affiant is able to state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice. It was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause. * * *" See also Gallarelli v. United States, 260 F.2d 259, 261 (1 Cir. 1958).

And in Inland Freight Lines v. United States, 202 F.2d 169, 171 (10 Cir. 1953) the court held:

"To warrant disqualification of a judge, the affidavit must contain more than mere conclusions on the part of the pleader. Facts must be pleaded which show that there exists personal bias and prejudice on the part of the trial judge. * * *"

The foregoing basic rules must be borne in mind in examining the affidavit of bias and prejudice filed by the appellant.[5] In it he first complains that at his arraignment he requested the Judge before whom he was subsequently tried to assign counsel to defend him as he was without funds; that upon inquiry

4. 28 U.S.C. § 144 reads:
"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

5. These fundamentals are given careful consideration in In re Federal Facilities Realty Trust, 140 F.Supp. 522 (N.D. Illinois 1956).

as to whether he possessed any property the court was informed that he had recently inherited real estate and property of the value of $60,000 but that the court wrongfully denied his application to assign counsel and directed him to find a lawyer who would "take a lien of the inherited property". The appellant does not deny that he was able to obtain counsel. Fed.Rules Cr.Proc. rule 44, 18 U.S.C.[6] Indeed, the fact is that he proceeded to retain counsel who represented him at his trial.

The second ground upon which the appellant claimed that the Trial Judge manifested his bias and prejudice toward him was because he held him to high bail of $125,000 and refused to reduce it. But here again the fact is that bail was reduced to $60,000, which was furnished.

Clearly these two allegations concerned rulings by the Judge considered by the appellant as adverse to him, but they present no facts which justify the disqualification of the Judge as being personally biased or prejudiced.

The affidavit contained a third complaint that, at the trial, the Judge "permitted the prosecution to transcend the bounds of propriety repeatedly with impunity * * * and himself engaged in harsh cross-examination with the vigor of an embattled prosecutor and, further, made most improper inquiries into matters that were both immaterial and irrelevant but at once prejudicial."

Fourth, the appellant claims that during the charge to the jury the "Judge improperly argued the case for the prosecution, made erroneous and misleading summation of the evidence, failed to properly instruct on entrapment, 'whitewashed' the inductive acts of the agents and openly condoned their obvious scheme of entrapment, invaded the province of the jury in regards to the Count Two, made slighting inference and a sneering referral to affiant as 'this innocent man.'"

■■ These statements are couched in generalities and fail to recite specific acts, which are required for a successful attack upon the qualifications of the Judge to sit in the proceedings, with two exceptions. One is that no proper instruction as to entrapment was delivered to the jury, which is also advanced as a ground for the motion to vacate the sentence under § 2255 and Rule 35. It is sufficient to say at this point that if it should be assumed that the Trial Judge failed to instruct the jury properly in this respect his mistake would be an error of law only and obviously not a basis for a charge against him of personal bias and prejudice. Further discussion of the charge by the Trial Judge on entrapment is deferred until consideration is given to it later herein with regard to appellant's motion under § 2255. The other ground is that the Judge made slighting inference and a sneering referral to the appellant as "this innocent man". The Judge used the expression as quoted but the complaint that it was "a slighting inference and a sneering referral" when read in the context of the Judge's charge, is not supported.[7]

6. Fed.Rules Cr.Proc. rule 44, 18 U.S.C. reads:
 "If the defendant appears in court without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or is *able* to obtain counsel." (Emphasis supplied.)

7. The expression appears in the charge concerned with the defense of entrapment where the judge used the following language:
 " * * * You will, therefore, consider where the truth of the situation lies, you will then determine whether Simmons *is this innocent man,* and that the Government agents went there and planted this idea or otherwise he would not have thought it or done it, or whether, on the other hand, he was a person that was ready when opportunity afforded itself to enter into an illegal enterprise, and that the Government agents just afforded the opportunity, and used some stratagem in order to allay his fears. * * *" (Emphasis supplied.)
 Earlier in the same portion of the charge and preceding the above by one

Finally, the appellant avers that a manifestation of bias and prejudice occurred during the hearing on sentence when the Judge "expressed his personal desire to impose a whipping, incorrectly stated that a relative of the affiant had been before the court for the same offense, and again indulged himself by referring to affiant as a 'mouthy' person."

The language used by the Judge was not particularly restrained,[8] but the adjective "mouthy" was not applied to the appellant personally, precisely as he suggests, but to certain phrases attributed to him on some former occasion, in connection with the case of another involved in a narcotic violation. The words used by the Judge were probably irritating and offensive to the appellant. However, in the process of sentencing, a judge may, and often does, express his appraisal of the conduct of the defendant before him in emphatic language, in order to impress him with the error of his ways. The instant statement of the Judge could have been in the exercise of such an effort but it is not indicative of any personal bias or prejudice against the appellant.

 Hence appellant's affidavit of bias and prejudice and the motion to withdraw in connection therewith fails to meet the standards required under 28 U.S.C. § 144.

– II –

As a second string to his bow the appellant offers the same complaints upon which he based his affidavit of bias and prejudice as grounds for the vacation of

his sentence under 28 U.S.C. § 2255 and Rule 35 of the Federal Rules of Criminal Procedure. As further grounds he alleges, among other reasons, that:

" * * * the issue of entrapment was neither fully presented nor fairly charged at the trial below. Even the half measure attempt to instruct the jury in accordance with Sorrells [Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413] was completely negated by the Judge's sarcastic and uncalled remark that, 'it is for sure that a government agent would never make a purchase if he went down with a great big badge, "Narcotic Investigator",' etc., thus giving judicial sanction to the entrapment."

The appellant contends that by reason of the foregoing and other actions of the Trial Judge he was deprived of his constitutional guarantee of due process of law bringing him within the jurisdiction of the court in a proceeding under § 2255. He argues:

" * * * it is apparent, even from the colored record which is permeated with untoward incidents that the trial judge by his remarks, rulings, attitudes and charge to the jury was not only prejudiced against appellant but partial and biased in favor of the prosecution, thereby assuring conviction by unduly impressing the jury."

 The objections made by the appellant in his affidavit of bias and preju-

---

and half pages of the record the Judge observed:

" * * * You will, therefore, ask yourselves this question with respect to the defense of entrapment: Did the Government agents plan this offense and did they by fraud, trickery or persuasion plant this idea in the mind of *an innocent person* who would not have done it except for such trickery or fraud. * * *"
(Emphasis supplied.)

8. The actual language of the Judge in this connection was as follows:

"You, sir, I could, with a very easy degree of failing in the exercise of restraint use an arm of this court, and impose upon you a sentence in the form of a whipping. A relative of yours was before this court for this very same thing, this nefarious traffic, and you sat there with the probation officer, and used a lot of mouthy phrases to tell him, in fact, what a dirty traffic this is, and why he should not become an addict, and then you turn around, and for a few pieces of silver, subscribe to the same situation. It is difficult to sit here, and not impart to you the full maximum that could be yours under the verdict of this jury, 20 years on each count, 40 years. It is difficult, and I only restrain myself with a great deal of effort."

dice were neither raised at the time of his trial nor in an appeal. They are as impotent to sustain the motion under § 2255 or under Rule 35, as they are to support his affidavit. In so far as they were aimed at the conduct of the trial as being prejudicial to him they could have been the basis of appeal, but he took no appeal. A motion under § 2255 may not be substituted for the appropriate appellate procedure, unless there has been a deprivation of constitutional rights so fundamental as to amount to a denial of a fair trial. Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1946); Adams et al. v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942).[9]

■ Notwithstanding the vagueness of appellant's charges that the Trial Judge permitted the United States Attorney to transcend the bounds of propriety; that he engaged in harsh cross-examination with the vigor of an embattled prosecutor; that he argued the case for the government and used a misleading summation of the evidence, the entire record of the trial has been reviewed, with particular attention to such allegations. The examination revealed nothing to substantiate them. At most it can be said that the Trial Judge engaged the appellant in a somewhat lengthy examination but nothing developed therefrom that can be said to have prejudiced the appellant in the eyes of the jury.

With reference to his claim that the charges he now makes are cognizable under § 2255, appellant places much reliance upon Banks v. United States, 249 F.2d 672 (9 Cir. Dec. 2, 1957) and its interpretation of Sorrells v. United

States, 287 U.S. 435, 53 S.Ct. 210, 77 L. Ed. 413 (1932). It is true, as appellant asserts, that in the Banks case the court quoted from the concurring opinion by Justice Roberts [10] in that case that:

" * * * the violation of the principles of justice by the entrapment of the unwary into crime should be dealt with by the court no matter by whom or at what stage of the proceedings the facts are brought to its attention. Quite properly it may discharge the prisoner upon a writ of habeas corpus. * * * " 287 U.S. at p. 457, 53 S.Ct. at p. 218.

But in the Banks case the allegations on a motion under § 2255 were that the movant's attorney had advised him that he had a defense of entrapment and that he could safely admit that he had engaged in the purchase of heroin because the court would grant a motion to free him on the defense of entrapment; that the attorney failed to make the motion and no instruction was given thereon and the jury had the movant's admission of the facts of the indictment with no choice but to convict. There was also a motion that the government furnish a transcript of the trial testimony. The Court held that the allegations stated a controversy cognizable under § 2255 contrary to the decision of the district court, ordered that the necessary portions of the transcript should be furnished and remanded the case.

The appellant, however, failed to note that the case came before the identical court eight months later, as reported in Banks v. United States, 258 F.2d 318 (9 Cir. Aug. 1, 1958), cert. den. 358 U.S. 886, 79 S.Ct. 128, 3 L.Ed.2d 114 (Nov.

9. Some of the cases to this effect are: United States v. Duhart, 269 F.2d 113 (2 Cir. 1959); United States v. Stevens, 260 F.2d 549 (3 Cir. 1958); United States v. Rutkin, 212 F.2d 641 (3 Cir. 1954); United States v. Anselmi, 207 F. 2d 312 (3 Cir. 1953); United States v. Krepper, 181 F.2d 95 (3 Cir. 1950); Turner v. United States, 262 F.2d 643 (8 Cir. 1959); Hastings v. United States,

184 F.2d 939 (9 Cir. 1950); United States v. Wiggins, 184 F.Supp. 673 (D.C. D.C.1960); United States v. Reade, 113 F.Supp. 113 (D.N.J.1953).

10. Incidentally in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L. Ed.2d 848 (May 19, 1958) the Court declined to reassess the doctrine of entrapment announced in the concurring opinion.

10, 1958), after another order by the district court once more denying the motion under § 2255. This time it was held that contentions (a) that the appellant was denied due process of law because the court's instruction on entrapment was insufficient in law and fact; (b) that he was denied a fair trial because the judge failed to instruct the jury that if it found that Banks had acted as a "purchasing agent" he could not be convicted under the indictment as a seller and (c) that the court erred when it failed to pass on the merits of appellant's allegation that he had been entrapped, did not involve violations of the constitutional rights of the appellant, but presented issues which could have been raised by a timely appeal and that § 2255 does not give the right to try over again a case in which the appellant was found guilty, citing Hastings v. United States, 9 Cir., 184 F.2d 939 (1950). Thus, appellant's reference to the Banks case fails to support his claim to relief under § 2255.

■ Appellant's counsel's only exception to the charge to the jury was as follows:

"Your Honor please, I would like to make one exception to your Honor's charge, and that is with respect to the statement that the court made to the jury that it would be natural that the Government agents would not walk down to the defendant's place with large badges to show that they were Government agents and expect that any result would come from it because the statement made by the court I don't feel would be a reasonable comment, and that it

tended to give the jury some justification in approving the tactics resorted to by the Government agents in this particular case where the case is conflicting, so far as the evidence is concerned, that they posed from the very inception as being racketeers, or people in that category."

The objection is without merit. The language of the Trial Judge,[11] when viewed in context and in its relationship to the entire charge is devoid of the prejudice attributed to it.

■ Appellant complains, in his motion under § 2255, that the Trial Judge failed to follow the precepts laid down in Sorrells v. United States, supra and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) with regard to his defense of entrapment and that his case falls precisely within them. In Sorrells the Court held that the trial court erred in refusing to submit the defense of entrapment to the jury. That cannot be said of appellant's case. In Sherman, the appellant submits that the Court held that the *undisputed* testimony of the prosecution's witnesses established entrapment as a matter of law and that this is analogous to the instant case. Granting that Sherman so held, the analogy claimed by appellant fails for the reason that the prosecution's witnesses in the instant case made out a prima facie case against the appellant and his testimony disputing their evidence properly raised questions of fact for the jury's determination. Nor do the cases in this circuit cited by appellant[12] aid

---

11. Specifically the Trial Judge charged:
"* * * I doubt that it would be a very natural thing for a person to deliberately enter into a situation like this with known Government agents. It is for sure that a Government agent would never make a purchase if he went down with a great big badge 'Narcotic Investigator', or when he got there instead of intimating that he was engaged in an illicit enterprise that he said 'Now, I want to be fair and square with you. I am a Government agent, so that if you

commit a crime, I am going to arrest you for it.' They are things for you to consider in determining where the truth lies between these two conflicting stories in this situation."

12. The four cases in this circuit to which appellant referred are United States v. Roett, 3 Cir., 172 F.2d 379 (1949) (the defense of entrapment was declared unavailable to a defendant who over a period of years followed a criminal design which originated with him and his associates); United States v. Sawyer, 3 Cir., 210 F.

his argument that the Trial Judge erred in his treatment of his defense of entrapment.

In this case, as far as the record shows, the Trial Court, without a request for instructions on the defense of entrapment, nevertheless charged the jury fully thereon. Indeed, his language encompassed practically verbatim the language of the Supreme Court in Sorrells. Moreover, it is to be remembered that if the Trial Judge erred in a ruling of law which could have been reviewed on appeal and was not, such ruling does not furnish a basis for a motion under § 2255. The holding of the court in Davis v. United States, 205 F.2d 516 (5 Cir. 1953) is applicable here. There the court said:

> "Here, while urging upon us, as he urged below, that he was entrapped and, as he did there, his general claims that his conviction violated due process, he urges nothing which presents any valid reason for granting the motion.
>
> "In addition to the fact that he cannot use a section 2255 motion to retry his case, the record shows that he was represented below by counsel and that the defense of entrapment, which he now seeks to present, was fully presented and fairly charged on the trial."

 Appellant, nevertheless, insists that he was in any event entitled to a hearing upon his motion under § 2255 and further that such a hearing should have been held by a judge other than the Trial Judge, under United States v. Halley, 240 F.2d 418 (2 Cir. 1957). He urges that § 2255 itself assures him of that right, but the statute requires no hearing where "the files and records of the case conclusively show that the prisoner is entitled to no relief." [13] In this case there were available a transcript of the record of the trial and the file in the case. They were sufficient against which to test appellant's contentions. No formal hearing was required. United States v. Sturm, 180 F.2d 413 (7 Cir.), cert. den. 339 U.S. 986, 70 S.Ct. 1008, 94 L.Ed. 1388 (1950); United States v. Krepper, 86 F.Supp. 862 (D.N.J.1949), aff'd 181 F.2d 95 (3 Cir. 1950). As for the authority of United States v. Halley, supra, that another judge should hear a motion in the nature of coram nobis, there was a hearing in that case before the judge who heard the original trial. The motion was denied upon the judge's findings. The court in a dictum merely suggested "the advisability of having such applications heard before some district judge other than the judge or judges who presided at the time of plea and the time of sentence."

 The appellant's claim for relief under Rule 35 of the Federal Rules of Criminal Procedure is untenable. Its limited purpose is to permit correction at any time of an illegal sentence, "not to re-examine errors occurring at the trial or other proceedings prior to the imposition of the sentence." Hill v. United States, 368 U.S. 424, 430, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). The sentences imposed in this case were long but not illegal since they did not exceed the sanctions authorized by the statutes under which appellant was convicted.

Finally, appellant seeks to assimilate his case to the recent decisions of the Supreme Court in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), in which evidence secured

---

2d 169 (1954) (the issue as to whether the defendant yielded to the importunations of federal agents should have been submitted to the jury); United States v. Moses, 3 Cir., 220 F.2d 166 (1955) (a conviction was reversed because there was no showing of collaboration or association with the seller); United States v. Prince, 3 Cir., 264 F.2d 850 (1959) (the refusal of trial court to charge that if the jury found that the defendant acted on behalf of the government agent purchaser and purchased drug from a third person with whom he was not associated, defendant was not guilty of any violation with which he was charged).

13. Note 2, supra.

by searches and seizures in violation of the Fourth Amendment was declared to be inadmissible. He says that the conduct of the Trial Judge in his case equally deprived him of his constitutional guarantee of due process. The analogy falls of its own weight.

■ As indicated heretofore a review of the entire record in this case conclusively shows that the appellant is not entitled to relief. The judgment was within the jurisdiction of the court and the sentence imposed was authorized by law and not otherwise open to collateral attack. There has been no denial of the constitutional rights of the appellant as to render the judgment in his case vulnerable to collateral attack.

The orders of the district court dismissing the affidavit of bias and prejudice and denying the motion to withdraw as well as the order denying the motion to vacate the sentence under § 2255 and under Rule 35 will be affirmed.