**TENANTS AND OWNERS IN OPPOSI-
TION TO REDEVELOPMENT
(TOOR) et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOP-
MENT (HUD) et al., Defendants.**

**No. C–69–324 SAW.**

United States District Court,
N. D. California.

Feb. 8, 1972.

**30**

Amanda Fisher, Sidney Wolinsky, San Francisco, Cal., for plaintiffs.

Frederick P. Furth, Henry Davis, San Francisco, Cal., for defendant Redevelopment Agency.

James L. Browning, U. S. Atty., Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., for defendant HUD.

## OPINION AND ORDER REJECTING DEFENDANTS' AFFIDAVIT OF BIAS AND PREJUDICE

OLIVER J. CARTER, Chief Judge.

### I: INTRODUCTION

This action is one brought by a group of tenants of a certain area of the City of San Francisco to require the redevelopment agency of that city, along with other defendants, to provide housing to replace that destroyed, or scheduled to be destroyed by a redevelopment project. The litigation was filed on November 5, 1969. Since that time there have been 357 docket entries, including pleadings, memoranda, affidavits, and Court orders. There have been numerous Court hearings, informal conferences, and hearings before a Special Master.

On January 20th of this year the defendant San Francisco Redevelopment Agency (henceforth "the local agency") filed an affidavit of bias and prejudice (see appendix) against the Honorable Stanley A. Weigel, the presiding judge [1] in these proceedings. Under Title 28 U.S.C. § 144 any party may file a "timely and sufficient affidavit" for the purpose of disqualifying the judge presiding in the case. The affidavit in the instant case was submitted by Robert L. Rumsey, the Executive Director of the local agency. In his affidavit Mr. Rumsey stated that his grounds for alleging bias were various remarks made by Judge Weigel during hearings in the case. Mr. Rumsey stated that he read transcripts of certain hearings and thereupon con-

---

1. Under the Case Assignment Plan contained in Local Rule 501 each case in the Northern District of California is assigned to one judge for all proceedings in that case. However in certain circumstances another judge may act in a case when the regular assigned judge is absent. (L.R. 102). Thus in this case Judge Harris of this court presided over a hearing and appointed former Governor Brown as "special master". Judges Sweigert, Peckham, Burke, Levin and myself also have had some involvement in the case at various times.

cluded that Judge Weigel was biased. Counsel for the local agency have also filed a memorandum of points and authorities, as well as the certificate of counsel that is required by the statute. Counsel for plaintiffs have filed a memorandum of law and some supporting documents as amicus curiae.[2]

On the 21st of January, the day following the filing of the affidavit, Judge Weigel requested of myself, as Chief Judge, to "review the complete record and to take such action as will best serve the cause of justice for all concerned."

Despite the able assistance of counsel and the apparent agreement by all concerned that I should participate in this matter I believe that a jurisdictional or at least procedural matter should be clarified to justify this intervention.

28 U.S.C. § 144 is a statute with a relatively long background but it has only been utilized sporadically throughout the years. Accordingly the procedures and application of the statute have varied somewhat. The language of the statute itself [3] implies that the judge to whom the affidavit of bias and prejudice is addressed should consider and rule upon it. Accordingly, in Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1920) the United States Supreme Court held that the judge in the case is entitled to pass upon the affidavit himself. However neither the cases following the *Berger* case, nor the words of the stat-ute rule out the possibility of referring the affidavit to another judge for consideration. In United States v. Grinnell Corp., 384 U.S. 563, 582, n. 13, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1965) the Supreme Court pointed out in a footnote that the presiding judge in that case had referred the matter to the Chief Judge of the Circuit for evaluation. The court expressed no view concerning the appropriateness of that procedure. A similar suggestion had been made even in the Berger decision in a dissent written by Justice Day (*supra* at 41, 41 S.Ct. 230). See also Los Angeles Trust Deed and Mortgage Exchange v. Securities and Exchange Commission, 285 F.2d 162, 173 (9th Cir. 1960).

Accordingly there being no explicit authority to the contrary and because it seems salutary in the instant case I find that it is proper for me to consider whether the affidavit filed against Judge Weigel comports with the requirements of 28 U.S.C. § 144.

Thus far I have spoken of evaluating the affidavit in a rather colloquial sense. The statute provides two words of art which are to figure in that analysis; "timeliness" and "sufficiency".

## II: TIMELINESS

28 U.S.C. § 144 is based on an earlier act passed in 1911 (28 U.S.C. 1940 ed. § 25, 36 Stat. 1090), and only slightly amended in 1948. In those earlier times the functioning of the United States Dis-

---

2. Various courts have taken different views over the years about the propriety of the other party becoming an advocate for the challenged judge. See: Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1920) contra. In re Union Leader, 292 F.2d 381 (1st Cir. 1961). Without taking a position on that issue I believe that it is always appropriate for an interested person to advise the court as amicus curiae. Ex parte N. K. Fairbank, 194 F. 978 (U.S.D.C.M.D.Ala. N.D. 1912).

3. "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a per-sonal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith." (As amended May 24, 1949, c. 139, § 65, 63 Stat. 99.)

trict Courts was somewhat different than today. Thus the clause of the statute requiring the affidavit to be filed not less than ten days before the beginning of the term then had a meaning which no longer exists.

The United States District Court for the Northern District of California no longer sits in specific sessions or terms but is deemed to be in continuous session at San Francisco. Local Rule 7(a). Accordingly there is no specific "timely" period to which the Court could look under the words of the statute.

The remainder of the sentence is not of much further assistance. While it speaks in terms of "good cause" it is quite clearly dependent upon the first clause for its full meaning. Thus a paraphrase might be, "good cause is to be shown why the affidavit was not filed 10 days before the beginning of the term." Since there is no term, and by extension no 10 days, it would seem rather obvious that there also can be no good cause shown.

■ This position has not been taken by all courts that have considered the question, at least not in so many words. However I believe that in a question of this kind involving serious allegations against a District Court Judge the courts should not be too technical. (See In re Federal Facilities Realty Trust, 140 F. Supp. 522, 527, (N.D.Ill.) This is all the more true when the statutory basis for the technicality is insubstantial. Accordingly I conclude that the affidavit is timely filed.

■■ By this finding or perhaps to be more exact, this refusal to exclude the affidavit on the ground of untimeliness, I do not mean to state that I will not take delay in raising the question of bias or prejudice into account in evaluating the sufficiency of the charges. Timeliness is always a matter to be given weight in evaluating the relative value of evidence. Courts since time immemorial have always looked with suspicion at "newly discovered evidence" or "surprise witnesses". I continue to believe that "[n]othing is more important in an affidavit than timeliness, and its counterpart, waiver. (Citing cases) The statute does not permit second guessing." In re Union Leader Corporation, 292 F.2d 381, 390 (1st Cir. 1961). Timeliness thus will be dealt with as a matter of weight rather than admissibility.

## III: SUFFICIENCY

A rather long and impressive line of cases has held that affidavits of prejudice are inappropriate to challenge adverse rulings of a judge during the course of a trial. Ex parte American Steel Barrel Co., 230 U.S. 35, 33 S.Ct. 1007, 57 L.Ed. 1379 (1913); Re Equitable Trust Co., 232 F. 836 (9th Cir. 1916); Chessman v. Teets, 239 F.2d 205 (9th Cir. 1956), vacated on other grounds, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253. Similar lines of authority have held that expression of judicial opinions based on evidence, United States v. Grinnell Corp., 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966), or even criticism of parties or attorneys, Beecher v. Federal Land Bank, 153 F.2d 987 (9th Cir. 1945), cert. den. 328 U.S. 871, 66 S.Ct. 1364, 90 L.Ed. 1641, reh. den. 329 U.S. 819, 67 S.Ct. 28, 91 L.Ed. 697, cannot be raised by means of 28 U.S.C. § 144. The thesis of each of these cases is that errors of law created during the course of a trial can always be corrected upon appeal and that is a much better way to deal with incorrect rulings than challenges to the judge's fairness. Of course as a general principle that logic is impeccable. However I do not believe that it is sufficiently inclusive enough, and it is just that exception I propose to address myself to.

Upon examining the above cited cases and many more of similar purport I have noticed they all tend to address themselves to one basic situation, a trial or hearing at which a judge decides issues against one of the parties and gave his reasons for doing so in a rather caustic or flamboyant fashion. The courts then held that neither the adverse decisions

alone nor the caustic language supporting the decisions could constitute grounds for showing bias or prejudice. This principle was well described in In re Union Leader, 292 F.2d 381, 389 (1st Cir. 1961) as the policy that a "party be discouraged from attacking a judge during the progress of a suit and thereby obtaining his own deliverance from a trial that is not going well, or from a judge who is not sufficiently favorable to him."

I do not believe that a careful reading of the cases indicates that never under any circumstances could a judge's courtroom conduct, constitute grounds for an affidavit under 28 U.S.C. § 144. Indeed a number of cases in this Circuit have considered such conduct on the merits rather than deny the affidavits ab initio. In Los Angeles Trust Deed and Mortgage Exchange v. Securities Exchange Commission, 285 F.2d 162 (9th Cir. 1960) the affidavit recited numerous occurrences from the various hearings. The Court examined many of them at length before determining that no bias or prejudice had been demonstrated. In Gladstein v. McLaughlin, 230 F.2d 762 (9th Cir. 1955), the affidavit concerned itself with conduct of the judge on the bench and also off the bench remarks. It was held sufficient to disqualify. A second circuit case, Wolfson v. Palmieri, 396 F.2d 121 (2 Cir., 1968) has gone beyond either local case, albeit in a criminal appeal. In that case the affidavit alleged bias from comments, and rulings made both in a previous civil trial and the pending criminal proceeding. The Court of Appeals exhaustively examined each alleged act and eventually held that no prejudice was shown. The case which most realistically dealt with the use of courtroom conduct for disqualification was In re Federal Facilities Realty Trust, 140 F.Supp. 522 (N.D.Ill., E.D. 1956). In that case Judge Campbell discussed at length the various allegations of the affidavit of prejudice filed against him. As to those allegations of conduct or statements made in hearings he pointed out that each of them was based upon evidence that he had considered. Thus he held that such comments and statements could not constitute prejudice because they were not from preconceptions but from opinions reached *coram judice*.

"A distinction must be drawn between a judicial determination derived from evidence and lengthy proceedings had before the court, and a determination not so founded upon facts brought forth in court, but based on attitudes and conceptions that have their origins in sources beyond the four corners of the courtroom. The latter type determination is the 'personal prejudice' that the statute guards against; the former type determination is not. And this is justifiably so since the efforts of one judge in hearing a case would be for naught if, once having reached some conclusion as the result of his being exposed to the particular facts of a case, he would then be precluded from exercising this familiarity in disposing of the case in its entirety. Another judge, if we were to reduce ourselves to this ridiculous absurdity, would then, of necessity, be forced to rehear the entire case and would, in all probability, arrive at the same conclusions which the first judge, by using his familiarity with the underlying facts of the case, could have reached with far greater dispatch." At p. 526.

Another such distinction was made in Craven v. United States, 22 F.2d 605, 607 (1st Cir. 1927).

"At most, then, the affidavit charges a 'bias and prejudice,' grounded on the evidence produced in open court at the first trial, and on nothing else. We hold that such bias and prejudice (if these be appropriate terms for a well-grounded state of mind (citation omitted)) is not personal; that it is judicial. 'Personal' is in contrast with judicial; it characterizes an attitude of extra-judicial origin, derived *non coram judice*. 'Personal' characterizes clearly the prejudgment guarded against. It is the significant word of

the statute. It is the duty of a real judge to acquire views from evidence. The statute never contemplated crippling our courts by disqualifying a judge, solely on the basis of a bias (citation omitted) against wrongdoers, civil or criminal, acquired from evidence presented in the course of judicial proceedings before him."

A third case discussing the distinction between prejudice and judicial fact finding was In re Linahan, 138 F.2d 650, 653 (2nd Cir. 1943).

"But, just because his fact-finding is based on his estimates of the witnesses, of their reliability as reporters of what they saw and heard, it is his duty, while listening to and watching them, to form attitudes towards them. He must do his best to ascertain their motives, their biases, their dominating passions and interests, for only so can he judge of the accuracy of their narrations. He must also shrewdly observe the strategems of the opposing lawyers, perceive their efforts to sway him by appeals to his predilections. He must cannily penetrate through the surface of their remarks to their real purposes and motives. He has an official obligation to become prejudiced in that sense. Impartiality is not guillibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions."

I do not believe that the weight of authority would preclude an affidavit of prejudice that was clearly based upon completely extraneous and prejudicial remarks made by a judge merely because they were made in court rather than on the street. Thus in Wolfson v. Palmieri, 396 F.2d 121, 124 (2nd Cir. 1968) the court stated:

"On the other hand, to establish the extrajudicial source of bias and preju-

dice would often be difficult or impossible and this is not required. Comments and rulings by a judge during the trial of a case may well be relevant to the question of the existence of prejudice. Conceivably also, and we shall assume this in petitioners' favor, as was done in Rosen v. Sugarman [2 Cir., 357 F.2d 794] *supra,* contacts during a trial might themselves have created such a degree of irritation with a party or his lawyer as to create the bent of mind to which the Supreme Court referred in *Berger.*"

The court in that case then examined the claims in the affidavit seriatim and compared them to the transcript of record.

■ In accordance with the above discussion and authorities I conclude that the affidavit of the defendant local agency is entitled to consideration even though it recites entirely matters which occurred during the hearings in this case.[4]

The above ruling immediately presents the Court with a new procedural difficulty.

The courts have rather uniformly held that the facts In the affidavit must be accepted as true and cannot be contradicted by other facts. Thus in the *Berger* case the dissenting opinions objected quite vociferously that the majority ignored the fact the affidavit offered by the defendant had been shown to be false by a reporter's transcript of the actual statements of the trial judge. The majority nonetheless held that the statute "withdraws from the presiding judge a decision upon the truth of the matters alleged." (*Supra,* 255 U.S. at 36, 41 S. Ct. at 234) This holding remained the law to date.

It is not clear that the Supreme Court in *Berger* meant to close off all inquiry into the circumstances of the alleged remarks. I make this assertion with three rather large qualifications foremost in

---

4. Of course if I have erred in this determination the entire affidavit can be stricken for being legally insufficient e. g. because it refers strictly to courtroom conduct rather than extra legal prejudice.

my mind. In this instance I am not the presiding judge in the case and so I am not passing upon my own conduct. More importantly, the conduct and statements complained of are a matter of record in this case, not, as in *Berger,* somewhere else. Finally, the affidavit purports to do nothing more than to cull certain statements of the court from the transcript and state that from those excerpts he finds bias. In such a circumstance I believe that I as the decision maker and Judge Weigel as the accused are entitled to have the context of the statements brought to light as well.

In taking this approach I do not believe that I am really paving any new ground, but merely stating what other courts before me have done sub silentio. Thus in Los Angeles Trust Deed and Mortgage Exchange v. Securities and Exchange Commission, 285 F.2d 162 (9th Cir. 1960) the Court indicated that " . . . a thorough reading of the record . . . " did not substantiate the affiant's position. The First Circuit, In re Union Leader, *supra;* the Second Circuit, Foster v. Medina, 170 F.2d 632, 633; and the Third Circuit, Simmons v. United States, 302 F.2d 71 (1962) also have allowed the record to be consulted in appropriate cases.

■ In accordance with the above reasoning and authorities I believe that it is proper for me to consider the entire record in this case to determine the context and background of Judge Weigel's remarks selected for inclusion in the affidavit.

## IV: MERITS OF THE AFFIDAVIT

The affidavit of Mr. Robert L. Rumsey makes reference to three hearings at which Judge Weigel allegedly made certain remarks that revealed prejudice. (See appendix) The first two of those hearings were September 2 and September 10, 1970.

As the Court mentioned in section II of this opinion it considers timeliness to be an important factor to consider in evaluating the sufficiency of the facts al-

leged in an affidavit. In this case the two hearings referred to occurred more than 16 months ago. Since that time there have been numerous rulings and other actions in the case. For the defendants to have sat back for this long and now attempt to pick through the record and allege that prejudice was evidence 16 months ago strikes this Court as incredible.

Without discussing all of the intervening activities in this case, the Court regards the following few as extremely relevant. On October 20, just 40 days after the second of the allegedly prejudiced hearings, the parties were able to reach a tentative settlement. When that settlement was rejected after a vote among the plaintiffs a new series of conferences was begun. After a weekend of continued negotiations the defendant local agency, and the late Mr. Justin Herman, the then Executive Director of that agency, made a formal written request to the Court to enter an order adopting the essentials of the October 20 settlement. Over the protests of the plaintiffs, the Court in November, 1970, issued an order that all assumed or hoped would terminate the litigation. Not only did Mr. Herman himself, and Mr. Frederick Furth, the then and present attorney for the local agency, sign the request for the order, but Mr. Furth took occasion to say to Judge Weigel,

"Your honor, may I express the appreciation of the local defendants for the tremendous effort that Your Honor put into this case and the time that Your Honor has put in the last four days nearly non-stop in drafting the order and drafting the documents."

This Court believes that such a statement indicates quite clearly that no bias and prejudice or bad feelings existed between the local defendants and the Judge at that time. Clearly when they thought the cards were with them they enjoyed the game.

The broad concept of fair play expressed in In re Union Leader, *supra,* 292 F.2d 390, "The statute does not permit second guessing" estops the defend-

ants from now asserting 16 month old comments of the Judge. Additionally there is a quite clear application of the principle of waiver. Mr. Frederick Furth, the present attorney for the local agency, was representing the agency both at the time the remarks were made and at the time of the settlement and consent decree. He cannot be absolved of complete and full knowledge of all particulars, and neither can his clients. At the time of the September 2 and September 10 hearings Mr. Herman, not Mr. Rumsey was the Executive Director of the local agency. It is patent that someone, either Mr. Furth, Mr. Herman, or others in control made the decision not to allege prejudice at that time.[5] They cannot be permitted to gainsay that decision at this late date.

From the fact that counsel later indicated satisfaction with the participation of Judge Weigel; from the fact that subsequently a consent order was signed by representatives of the local defendants; and from the fact that a conscious decision was made not to file an affidavit of bias and prejudice at the time—I find that the remarks made at the September 2 and September 10, 1970, hearings cannot be considered for purposes of the present motion to disqualify.

The affidavit of Robert L. Rumsey refers to several incidents during the course of a hearing on January 4, 1972, which allegedly indicate bias and prejudice on the part of Judge Weigel.

The first claim is that Judge Weigel asked for comment from defense counsel and then cut them off and rebuked them for making said argument. Assuming that a rebuke to counsel for specific behavior can evidence bias and prejudice toward a party, a not uncontested proposition, I fail to see that the allegation is borne out by the record. At two points during the proceeding counsel for the local defendants were threatened with contempt. On pages 10, 11 and 12 of the transcript Mr. Davis, co-counsel for the agency, continued to interrupt Judge Weigel, who was having a discussion with Mr. Locke, counsel for HUD. Finally, Judge Weigel requested Mr. Davis to step to the side bar of the bench and said: "If you interrupt this proceeding once again, I will hold you in contempt of court. You will speak when you are spoken to, sir." Nothing further was said, and the Judge resumed his discussion with Mr. Locke. The Court finds nothing in such a comment or action of a Judge to indicate bias or prejudice. Certainly such a mild disciplinary action, whether warranted or not, could not constitute personal bias or prejudice against a party within the meaning of 28 U.S.C. § 144.

Mr. Rumsey alleges that at the same hearing the Judge "falsely accused the Redevelopment Agency of attempting to exert pressure on the Court to avoid the application of the law." I believe that it is quite clear from numerous decisions that this Court is not bound to accept the affiant's conclusion that the Judge's statements were false. Re Beecher, 50 F.Supp. 530 (Wash.1943); Simmons v. United States, 302 F.2d 71 (3rd Cir. 1962); In re Federal Facilities Realty Trust, *supra*.

In any event such a statement is an observation of a trial judge that is well within his judicial role. As was said in In re Union Leader, *supra*, "a judge's ordinary and natural reactions to the conduct of, or evidence developed about, a party in a case before him [do not] create a disqualification." (292 F.2d p. 388) There is certainly every indication in the record of this case, not to mention in the public media, that both sides in this litigation have been jockeying for position. Not only is that obvious but it is not necessarily condemnatory. There are large issues at stake in this action and both sides have taken every

---

5. The affidavit points out that Mr. Furth suggested orally on September 2, 1970 that Judge Weigel withdraw from the case (Tr. Sept. 2, p. 289). Additionally at page 4, paragraph 12, the affidavit indicates that a positive decision was made not to move for disqualification.

opportunity to let that be known. I find nothing in the record of the hearing of January 4, 1972, to indicate that Judge Weigel was even charging the defendants with misconduct. I find rather that he was merely indicating that he would not be swayed in his holdings no matter what pressure was brought, and therefore that the parties might better invest their efforts than in propaganda campaigns.

In paragraph 15 of the affidavit Mr. Rumsey claims that Judge Weigel again threatened counsel for the local agency with contempt. In this instance counsel was allegedly responding to a question from the Judge. The only such instance I can find remotely resembling that characterization occurred on pages 28 and 29 of the transcript. Judge Weigel stated that all parties were expected to give notice of certain proceedings to all parties. He concluded by saying that whoever doesn't understand that " . . is going to be in real trouble with the Court. Do you object to that?" Mr. Furth responded "No", but then sought to make an additional statement. While the Court was receiving the responses to the question from other counsel Mr. Furth interjected the following:

> "I cannot represent my client if I am not permitted to make a statement, and the statement I am making is that I think Your Honor is saying one thing but meaning another. That is what I think. I am an officer of the court. I have a duty to carry out the Court's orders. Right now I wish to inform Your Honor that I see no reason why the Redevelopment Agency cannot make the survey."

Judge Weigel instructed Mr. Furth to step to the side bar of the bench and said, "If you once again say to the Court that the Court is saying one thing and means another, you are going to be held in contempt of Court." Mr. Furth apologized to the Court after which he was permitted to explain his contention at some length.

While the above exchange between the Court and counsel was slightly heated there was nothing to indicate bias or prejudice. For counsel to suggest that the Court was guilty of doubletalk was at least impolitic if not provocative.

In paragraph 16 of the affidavit it is alleged that Judge Weigel accused the local agency of "shenanigans". I would think that if that is the worst that persons could ever be accused of the world would be a much improved place. Dictionaries variously define the word to mean prankishness, mischief, trickery, foolery, evasion, or deceit. I do not believe that such a puckish word is sufficiently condemnatory to reveal bias and prejudice. In fact as a contemporary of Judge Weigel I believe its use reveals a judge's age more than his state of mind.

In addition to accusing the Redevelopment Agency of "shenanigans" Judge Weigel allegedly accused the local agency of wanting to "throw out tenants, use federal funds to do it." It appears to me that that is merely a colorful way of describing the agency's actual function. On pages 343–350 of the September 10, 1970, transcript the functions of the agency were set out by its witness. The agency's role is to acquire property, evict tenants, and clear the land for new construction. However more important than the essential correctness of Judge Weigel's statement is the context in which it was made. The entire remarks of Judge Weigel were as follows:

> "I am tired of shenanigans, I am tired of any proceedings in these cases other than in accordance with the prior orders of this Court and in accordance with the spirit of the order. And if there is any error in any of those orders, I will be glad at any time to correct it. But people have got to decide that if they want to build buildings and throw out tenants and use federal funds to do it, they have got to meet the requirements of the law with respect to providing alternative housing. This is not a position of this Court; this is the position of the Congress of the United States." (tr. Jan. 4, p. 35)

The entire context of the Judge's remarks make it clear that he referred

to the functions of the local agency only in passing and was addressing himself primarily to the central issue of the lawsuit. After brief interjections by counsel for each party the Court continued:

"And if there be any doubt, talking about who is holding up progress and proceedings in Yerba Buena, it is not the plaintiffs, it is not the Court. It seems to this Court that it is the failure of the Redevelopment Agency gracefully to acknowledge its responsibilities under law and time and time again undertaking in one way or another to run the ends on that and I'm not going to permit it." (tr. Jan. 4, p. 36)

At that point Mr. Furth requested a trial date. The Court responded with an additional statement which is grounds for the final allegation of bias and prejudice. The statement of the Court was as follows:

"Well you are making all kinds of requests. As you know, it is kind of like the forward passes, clear passes at the end of a football game. Now Mr. Furth, you know perfectly well that there are lots of things that have to be done before a trial can be had. Lots of notices to be given. The rules of court have to be complied with, and you know perfectly well one other thing, that for all practical purposes there isn't any need for any trial in this case, and we have had trial after trial after trial and including the trial this afternoon. We have hashed over the same old things, and I just don't want any more of it, counsel, and I want to make it very clear if there is any—anything in any order of this Court that you, Mr. Wolinsky, or you, Mr. Locke, or any of your clients, or you, Mr. Furth, or your clients, don't understand, if you don't understand the plain language in the order of the Court, give me something in writing stating specifically what question or clarification is desired. Serve it first upon the opposing party and all other parties, and I will undertake to clarify it. But I have read these orders over

and they seem to me to be understandable to any person who can read high school English." (tr. Jan. 4, pp. 36–37)

Mr. Rumsey, in his affidavit, claims that the above statement indicates that the Judge has prejudged the facts that should be considered at trial. Such a claim is obviously a misunderstanding of the nature of the proceedings rather than a meritorious allegation.

This action has been brought in equity seeking temporary and permanent injunctions against actions of the defendants that allegedly violate federal requirements. In such a proceeding no jury is utilized, the judge is the finder of the facts. In federal procedure there are generally three principle stages to an injunctive or equitable type of action. The plaintiffs in such a suit usually request a temporary restraining order, a preliminary injunction, and a permanent injunction. In the course of the hearings to determine whether to issue a temporary restraining order and subsequently whether to issue a preliminary injunction the Court is presented many of the relevant facts in the case. Thus it is quite common that after a Court concludes that the evidence justified a preliminary injunction it may later utilize the same evidence to conclude that a permanent injunction is also warranted. Thus rather than three separate proceedings, one before issuing each type of court order, the process is cumulative with the final order often being based substantially upon evidence first introduced to secure the earlier orders.

Thus the two years of proceedings in this case have consisted in part of a number of small trials which have in due course become the basis for the various court rulings. Even more importantly, the defendants consented to the entry of the order of November 9, 1970. It was that order which Judge Weigel was most concerned with during the hearing on January 4, 1972.

Thus as to the final alleged prejudicial remarks of the Court, I find that Mr. Furth was being disingenuous in his

demand for a trial date and Judge Weigel quite rightly rebuked him for it.

### CONCLUSION

I have examined the records of the various hearings regarded as pertinent by the defendant local agency. I have also researched the law pertaining to disqualifying judges. I conclude that the affidavit of Robert L. Rumsey is insufficient to require the disqualification of the Honorable Stanley A. Weigel from further hearings in this case.

It is ordered that the affidavit of Robert L. Rumsey be, and the same is hereby rejected as insufficient under 28 U.S.C. § 144.

It is further ordered that the case be returned to Judge Stanley A. Weigel for all further proceedings.

### APPENDIX

### AFFIDAVIT OF ROBERT L. RUMSEY AND SAN FRANCISCO REDEVELOPMENT AGENCY FOR DISQUALIFICATION OF JUDGE

STATE OF CALIFORNIA 
CITY AND COUNTY OF SAN FRANCISCO } SS

ROBERT L. RUMSEY, first being duly sworn deposes and says:

1. I am now and have been since December 7, 1971, the Executive Director of Defendant San Francisco Redevelopment Agency and am authorized, by resolution of the members of the Board of Directors of that Agency, to attest to and file this affidavit to disqualify Judge Stanley A. Weigel in the within cause. I have been employed by the San Francisco Redevelopment* Agency in an executive capacity since 1959, and have been personally familiar with Yerba Buena Project and the instant litigation since its inception. The basis of the facts alleged herein, except where otherwise stated, is my reading of the official transcripts of record of the hearings referred to herein and my familiarity with the Yerba Buena Project and this litigation.

2. I am informed and believe and thereupon allege, on the basis of the facts recited herein, that the said Judge Stanley A. Weigel has a personal bias and prejudice against the San Francisco Redevelopment Agency and in favor of the Plaintiffs and their counsel.

3. On September 2, 1970, the San Francisco Redevelopment Agency requested, in open court and through a motion filed on that day, that Judge Weigel shorten the time for hearing the Redevelopment Agency's Motion to Dissolve the then pending injunction.

4. During said September 2, 1970 hearing, counsel for the Redevelopment Agency informed the Court that an unidentified man had been killed in a fire in a vacant former hotel in the Yerba Buena Project area, which hotel would have been demolished but for the injunction then pending. Judge Weigel responded by accusing the Redevelopment Agency and its counsel of "sensation mongering." Judge Weigel also accused the Redevelopment Agency and its counsel of a lack of good faith in bringing the incident of the fire to the Court's attention and accused the Redevelopment Agency and its counsel of having objectives other than protecting the lives of persons in the project area, in bringing the incident of the fire to the Court's attention. The said accusations by Judge Weigel against the Redevelopment Agency and its counsel were and are false.

5. At said hearing on September 2, 1970, Redevelopment Agency counsel suggested that Judge Weigel might want to withdraw from the case and Judge Weigel responded that he would not dignify counsels' suggestion.

6. On September 10, 1970, a hearing was held on the Plaintiffs' motion to continue the hearing on the Redevelopment Agency's motion to dissolve the injunction. During the course of said hearing, Judge Weigel raised the subject of a newspaper article which alleged that re-

**40**

development agency officials were hoping that political factors would count for something in the Court's consideration of the Agency's motion to dissolve the then pending injunction.

7. During the course of said hearing on September 10, 1970, on the basis of the said newspaper article, Judge Weigel falsely accused the Redevelopment Agency of attempting to bring pressure upon the Court instead of trying the case according to law.

8. The subject of the fire described in Paragraph 4 above was again raised at said hearing on September 10, 1970. The Court stated, in relation to this incident:

> "I wouldn't put it past some people to start fires in the interest of embarrassing the Court, or in other ways, to use a vernacular, to 'set up the Court.' I'm aware of all that."

Judge Weigel's inference that the Redevelopment Agency would start fires or in other ways attempt to "set up the Court" was and is false.

9. I am informed and believe and thereupon allege, on the basis of the reports of counsel who were present at said hearing on September 10, 1970, that Judge Weigel was extremely incensed when he made the statement quoted in Paragraph 8 above and was looking directly at counsel for the Redevelopment Agency.

10. At said hearing on September 10, 1970, in relation to the newspaper article described in Paragraph 6 above, allegedly expressing a view attributed to the Redevelopment Agency that political factors would influence the Court, Judge Weigel falsely accused the Redevelopment Agency of improperly generating such newspaper articles by extra-curricular outside of Court activity. Also in relation to said newspaper article, Judge Weigel falsely accused the Redevelopment Agency of weakness and misguided character.

11. At said hearing on September 10, Judge Weigel accused the Redevelopment Agency of "foolish efforts to influence this Court" and suggested that Redevelopment Agency counsel should advise the Redevelopment Agency to discontinue such alleged efforts. No such efforts to influence the Court have ever been engaged in by any Redevelopment Agency representative.

12. After the above-referenced hearing of September 10, 1970, and for the next several weeks, Redevelopment Agency counsel were in the process of negotiating a dissolution of the injunction and dismissal of the lawsuit with counsel for the plaintiffs. The Redevelopment Agency therefore felt that no further Court rulings would be made in the case, and therefore concluded that Judge Weigel's personal prejudice against the Redevelopment Agency would have no further effect on the litigation. For this reason, and also for the reason that Judge Weigel had previously indicated his inclination to refuse to withdraw from the case, the Redevelopment Agency elected not to seek disqualification of Judge Weigel at that time. The injunction was in fact dissolved on October 20, 1970, on the basis of the agreement of counsel, and has not been re-instated. Other contested orders have been issued pending approval by HUD of a Revised Rehousing Plan. The Redevelopment Agency decided to request a trial on the merits of the case only after January 1, 1972.

13. Judge Weigel's personal prejudice against the Redevelopment Agency and extreme emotional involvement in this case became further apparent at the hearing of January 4, 1972.

14. During the course of said January 4, 1972 hearing, Judge Weigel reviewed one of his previous orders and invited counsel to speak when they disagreed with Judge Weigel's interpretation of the application of those prior orders to the situation at hand. When Redevelopment Agency counsel accepted the Court's invitation to speak when they disagreed with the Court's interpretation of prior orders and asked to argue the point, Judge Weigel refused to allow Redevelopment Agency counsel to argue

and unfairly rebuked said counsel. Judge Weigel also falsely accused the Redevelopment Agency of attempting to exert pressure on the Court to avoid the application of the law.

15. At the said hearing on January 4, 1972, Judge Weigel asked counsel whether they objected to the Court's ruling and when the counsel for the Redevelopment Agency attemped to make a statement in connection with his response to the Court's question, Judge Weigel threatened Redevelopment Agency counsel with contempt of Court. I am informed and believe and thereupon allege, on the basis of reports of counsel for the agency who were present at said hearing, that at the time Judge Weigel threatened the Agency counsel with contempt of Court he was emotionally overwrought and extremely excited.

16. At said hearing of January 4, 1972, Judge Weigel falsely accused the Redevelopment Agency of "shenanigans" and falsely accused the Redevelopment Agency of wanting to "throw out tenants, use federal funds to do it."

17. At said hearing on January 4, 1972, Redevelopment Agency counsel requested a trial date for the within cause. It was at that time and is now the Redevelopment Agency's intention to seek a trial on the merits of the within cause. Judge Weigel falsely accused Redevelopment Agency counsel of requesting a trial by way of a desperation ploy and stated, on the basis, I believe, of his prejudgment of the facts and law which the Redevelopment Agency would raise at the trial, that there isn't any need for any trial in this case and that the Court had had trial after trial after trial in this case.

18. On January 14, 1972, Redevelopment Agency counsel received a transcript of the hearing of January 4, 1972. A review of the transcript of this hearing confirmed by belief, stated on behalf of the San Francisco Redevelopment Agency, that Judge Weigel has a personal bias and prejudice against the San Francisco Redevelopment Agency and in favor of the plaintiffs, and that Judge Weigel is so emotionally involved in this case that he cannot render fair rulings or preside over a fair trial. In view of the Redevelopment Agency's recent determination to seek a trial on the merits in this case, and after sober reflection and due deliberation, the Redevelopment Agency has now confirmed its belief that Judge Weigel is personally biased and prejudiced against the Agency and that the forthcoming trial can only be fairly presided over by another judge.

SUBSCRIBED AND SWORN TO BEFORE ME THIS 20th DAY OF JANUARY 1972.

(s) M. Joyce Peterson
NOTARY PUBLIC

SAN FRANCISCO REDEVELOPMENT AGENCY
ROBERT L. RUMSEY
By (s) ————————————————
Robert L. Rumsey,
Executive Director of San Francisco Redevelopment Agency

CERTIFICATE OF COUNSEL

FREDERICK P. FURTH hereby certifies:

1. That he is one of the counsel of record for the San Francisco Redevelopment Agency in the within cause.

2. That the attached affidavit of Robert L. Rumsey for disqualification of Judge Weigel is made and filed in good faith pursuant to Title 28 U.S.C. § 144.

DATED: January 20, 1972
San Francisco, California
(s) ————————————————
FREDERICK P. FURTH

CERTIFICATE OF COUNSEL

HENRY F. DAVIS hereby certifies:

1. That he is one of the counsel of record for the San Francisco Redevelopment Agency in the within cause.

2. That the attached affidavit of Robert L. Rumsey is made and filed in

good faith pursuant to Title 28 U.S.C. § 144.

DATED: January 20, 1972
San Francisco, California
(s) ————————————
HENRY F. DAVIS